THE FIRST NATIONAL BANK OF BOSTON, trustee, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk.    January 14, 1931. — February 25, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Tax,* On income. *Trust,* Construction of instrument creating trust, Revocable trust. *Commissioner of Corporations and Taxation.*

Under the provisions of a trust called a funded life insurance trust, the donor, an inhabitant of this Commonwealth, transferred to the trustee insurance policies on his life and, in addition, certain securities, the net income of which was to be used during the life of the donor, as far as necessary, to pay the premiums on the policies, the excess income to accumulate, but with power, in the sole discretion of the trustee, to pay the donor a portion or all of the excess income, but not including gains realized from the sales of securities. On the donor's death the proceeds of the insurance policies were to be added to the trust fund, the income to be paid to the donor's wife and children with remainder over. A further provision was: "This trust shall be revocable or subject to amendment on or after the first day of January in any year upon the written declaration of the Donor delivered to the Trustee, but only upon condition that and provided the Donor shall, in the preceding calendar year, have notified in writing the Trustee of his intention so to revoke or amend." In the calendar year 1927, the trustee realized an excess of gains over losses on sales of intangible personal property held by him as such trustee, and the commissioner of corporations and taxation under regulation No. 8051 determined the taxable gain on the basis of cost to the donor and assessed a tax under G. L. c. 62, § 5, as amended by St. 1922, c. 449, § 1; G. L. c. 62, §§ 7, 10. Upon a complaint for abatement of the tax, it was *held,* that

(1) The trust was revocable;

(2) By reason of the power to revoke, the donor retained within his control the income arising from the sales of the securities, measured by the difference between the price received by the trustee and the cost to the donor, and to this extent the income accumulated for his benefit within the meaning of G. L. c. 62, § 10;

. (3) The regulation of the commissioner was within the scope of G. L. c. 62, § 38: it was a regulation designed to carry out the provisions of the statute and it was not contrary to them;

(4) There is nothing in the language of G. L. c. 62, § 10, which requires a basis for determining gains different from that followed by the commissioner, and the tax properly was assessed.

COMPLAINT, filed in the Superior Court for the county of Suffolk on April 25, 1930, and afterwards amended, described in the opinion.

In the Superior Court, the case was heard on an agreed statement of facts by *McLaughlin,* J. Material facts are stated in the opinion. The donor of the trust was an inhabitant of this Commonwealth. The complainant contended that, in assessing the tax, the respondent was required to use as the cost basis the fair market value of such securities when received by the trustee from the donor as part of the trust property instead of using as a cost basis their cost to the donor. The judge, without making any decision, reported the case for determination by this court, stating that the only issue was whether the cost basis used by the commissioner or the cost basis contended for by the complainant was the proper one.

*G. S. Fuller,* for the complainant.

*C. F. Lovejoy,* Assistant Attorney General, for the respondent.

CARROLL, J. This is a complaint for abatement of part of an income tax assessed upon the excess of gains over losses on sales by a trustee. The trustee, under a trust agreement made on September 8, 1927, sold between that date and December 31, 1927, certain securities of the trust. The trust is what is known as a funded life insurance trust. The donor transferred insurance policies on his life and, in addition, certain securities of which the net income was to be used during the life of the donor, as far as necessary, to pay the premiums on the policies.

the excess income to accumulate, but with power, in the sole discretion of the trustee, to pay the donor a portion or all of the excess income, but not including gains realized from the sales of securities. On the donor's death the proceeds of the insurance policies were to be added to the trust fund, the income to be paid to the donor's wife and children with remainder over. The seventh clause of the trust agreement was in these words: "This trust shall be revocable or subject to amendment on or after the first day of January in any year upon the written declaration of the Donor delivered to the Trustee, but only upon condition that and provided the Donor shall, in the preceding calendar year, have notified in writing the Trustee of his intention so to revoke or amend."

In deciding the amount of gains, the commissioner, under regulation No. 8051, determined the taxable gain on the basis of cost to the donor. The petitioner disputes the validity of this regulation and contends that the only taxable gain is the difference between the selling price and the value of the securities when on September 8, 1927, they were transferred to the trustee. Regulation No. 8051 provides: "In the case of revocable trusts established on or after January 1, 1916, the 'cost' shall be the actual cost to the grantor of the trust; and in the case of revocable trusts established prior to January 1, 1916, the 'cost' shall be either the actual cost to the grantor of the trust or the value on January 1, 1916, any gain or loss being computed as provided in Regulation 8062."

G. L. c. 62, § 5, as amended by St. 1921, c. 376, § 1, St. 1922, c. 449, § 1, provides: "Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows: . . . The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum." Section 7 provides: ". . . In determining

gains or losses realized from sale of capital assets, the
basis of determination, ·in case of property owned on
January first, nineteen hundred and sixteen, shall be the
value on that date, and in case of property acquired there-
after, the value on the date when it is acquired." (See
now St. 1928, c. 217, §§ 1, 2.)    Section 10 provides:
" The income received by estates held in trust by trustees,
any one of whom is an inhabitant of the commonwealth
or has derived his appointment from a court of the com-
monwealth, shall be subject to the taxes assessed by this
chapter to the extent that the persons to whom the income
from the trust is payable, or for whose benefit it is ac-
cumulated, are inhabitants of the commonwealth."

The Legislature had the power to impose a tax on the
complainant, using as a basis for the determination of
gains and losses the cost of the securities to the donor of
the trust. *Maguire* v. *Tax Commissioner,* 230 Mass. 503.
*Irwin* v. *Gavit,* 268 U. S. 161. See *Taft* v. *Bowers,* 278
U. S. 470. There is no constitutional objection which pre-
vents the Legislature from enacting that the fiduciary
shall, for purposes of taxation, be in the same position as
is the preceding owner. *Boston Safe Deposit & Trust Co.*
v. *Commissioner of Corporations & Taxation,* 273 Mass.
208, 210.

G. L. c. 62, § 10, treats of the question of the taxability
of trustees. As was said in *Harrison* v. *Commissioner of
Corporations & Taxation,* 272 Mass. 422, 426: " Examina-
tion of the history of the parts of § 10 does not disclose
any legislative purpose to make exceptions to its general
phraseology. That section indicates an intention on the
part of the General Court to tax all the income there de-
scribed which is within its power to tax. It is as broad as
the jurisdiction of the Commonwealth." The increase rep-
resented by the difference between the cost of the securities
to the donor and the price for which they were sold by the
trustee was income received within the meaning of the
statute. See *Brown* v. *Commissioner of Corporations &
Taxation,* 242 Mass. 242; *Taft* v. *Bowers, supra.* There
is nothing to the contrary in *Bingham* v. *Commissioner*

*of Corporations & Taxation,* 249 Mass. 79. The case before us is not one of complete separation of taxable property, as takes place where the estates of decedents are involved. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation, supra.*

The trust was revocable. The grantor had power to revoke it. While the revocability is contingent upon his declaration delivered to the trustee and notice given in the previous calendar year, the happening of the contingency was entirely within the power of the grantor. If he saw fit to exercise the power, the trust was revoked. The fact that he failed to exercise the power and failed to give notice is not important. He could have received the benefits from the increase if he desired to revoke. It has been said that " taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed — the actual benefit for which the tax is paid." *Corliss* v. *Bowers,* 281 U. S. 376, 378. By reason of the power to revoke the donor retained within his control the income arising from the sales of the securities, measured by the difference between the price received by the trustee and the cost to the donor, and to this extent the income has accumulated for his benefit within the meaning of G. L. c. 62, § 10.

The regulation of the commissioner was within the scope of G. L. c. 62, § 38, which gave him authority to make such rules and regulations as he may deem necessary, " not contrary to this chapter." See *Harrison* v. *Commissioner of Corporations & Taxation,* 272 Mass. 422, 431; *Allen* v. *Commissioner of Corporations & Taxation,* 272 Mass. 502, 509. The regulation was designed to carry out the provisions of the statute and it was not contrary to them. To ascertain gains and losses from the sales of capital assets the basis of determination of property owned on January 1, 1916, is the value on that date, and in the case of property acquired thereafter, the cost thereof is the basis. G. L. c. 62, § 7. The fact that the regulation referred to the revocable trust does not make it invalid, and we can see no reason why the regulation concerning such

revocable trusts is not within the power given the commissioner by the statute. We do not understand that this regulation has been previously questioned. See as bearing on this point, *Scott* v. *Commissioner of Civil Service,* 272 Mass. 237, 241.

There is nothing in the language of G. L. c. 62, § 10, which requires a basis for determining gains different from that followed by the commissioner. The words " income received by estates " do not show that the regulation in question is contrary to the statute. The trustee is the taxpayer, but the burden of the tax rests upon the beneficiary, see *Maguire* v. *Tax Commissioner,* 230 Mass. 503, 512, and the income which is taxed belongs to him. The gains realized from the sale of securities were not to be paid to the donor while the trust continued, but these gains were to be accumulated and he had the power to revoke the trust and could thus obtain for himself the principal including the accumulated gains. There is no injustice, therefore, in taxing the gains according to the rule of the commissioner. The donor owned the securities. When the securities were sold by the trustee, they were sold for the donor. He should bear the burden of the tax. In our opinion the regulation was reasonable and one which could be adopted.

We are not called upon to pass on the validity of the regulation concerning irrevocable trusts or to decide the question why a distinction between revocable and irrevocable trusts should be adopted. The trust, in our opinion, was revocable. The regulation was authorized and was not contrary to the statute.

*Complaint dismissed.*