SECOND BANK-STATE STREET TRUST COMPANY & another, trustees, *vs.* STATE TAX COMMISSION (and two companion cases[1]).

Suffolk.    January 7, February 25, 1958. — March 10, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Taxation,* Income tax. *Devise and Legacy,* Intestacy. *Trust,* Remainder. *Words,* "Acquired."

By reason of the ownership by a testator's three daughters of shares in intestate property of his consisting of the remainder interest, not disposed of by his will, in the principal of a residuary trust thereunder of which they were income beneficiaries, and of a court approved compromise agreement whereby portions of the trust principal corresponding to such shares of the daughters were set aside to be held in separate trusts for their benefit until the death of the last survivor of them, when the principal of the trust for each was to be paid over to her personal representative, each had an indefeasible future interest in trust principal which she could dispose of by will or which would pass to her heirs if she died intestate. [208]

--------

[1] The three cases were brought by the trustees under the will of Henry R. Reed, in each instance as trustees of a trust for the benefit of one of the testator's three daughters.

Where a will provided for the payment of income of a residuary trust to the testator's children and the issue of deceased children until the death of the last surviving child, when the principal was to be distributed among the issue then living of the children, but it ultimately became certain that there would be no such issue at that time and that the remainder interest in the principal was intestate property of the testator in which three living unmarried daughters of his had shares as heirs of his, whereupon, by a court approved compromise, portions of the principal corresponding to such shares of the daughters were set aside to be held in separate trusts for their benefit until the death of the last survivor of them, when the principal of the trust for each was to be paid over to her personal representative, the interests in the principal taken by the legatees of two of the daughters who died testate and by the heirs of the third who died intestate were received from the daughters, respectively, and were not "acquired by gift" from the testator within G. L. (Ter. Ed.) c. 62, § 7, for the purpose of computing income tax gains or losses resulting from a sale of trust securities by the trustee after the death of the last surviving daughter. [209]

An indefeasible interest in trust principal distributable upon the death of the owner of such interest to her personal representative was "acquired" by her heirs at the time of her death intestate within G. L. (Ter. Ed.) c. 62, § 7, for the purpose of computing income tax gains or losses resulting from a sale of trust securities by the trustee after her death. [210]

Where one owning an indefeasible interest in trust principal distributable to her personal representative upon the death of the last survivor of herself and her sisters bequeathed her interest by her will to such of specified persons or their issue as should be living at the time for distribution, which as events happened was some years after her own death, her legatees "acquired" their interests in the principal at the time of her death, not at the time for distribution, within G. L. (Ter. Ed.) c. 62, § 7, for the purpose of computing income tax gains or losses resulting from a sale of trust securities by the trustee after the time for distribution. [214]

For the purpose of computing income tax gains or losses upon a sale of trust securities by the trustee after the time for distribution of the trust principal, the tax basis of such of the securities sold as were purchased by the trustee after the persons entitled to the principal had "acquired" their interests in the principal within G. L. (Ter. Ed.) c. 62, § 7, would be the cost to the trustee. [215]

APPEALS from decisions by the Appellate Tax Board.

*Sumner H. Babcock,* (*Joseph H. B. Edwards & M. Gordon Ehrlich* with him,) for the taxpayers.

*Edward F. Mahony,* Assistant Attorney General, for State tax commission.

CUTTER, J.   In each of these cases, the trustees under the will of Henry R. Reed seek abatement of a 1953 income tax on capital gains received by them during 1952.   The Appellate Tax Board refused the abatements.   The trustees appealed.

The testator died in 1905.   By his will the residue was left in trust to pay the net income (a) to his widow during her life, and (b) thereafter, to his surviving children (and the issue of deceased children by right of representation) until the death of the "last surviving child" when the trust property was to be distributed "among all the issue then living of all my deceased children . . . by right of representation."

The testator's heirs at law were his widow, three living daughters, Ida, Emily, and Mary, and Francis R. Austin, a grandson, the son of a then deceased daughter.   Francis R. Austin (whose trust is not involved in this case) died intestate in 1918.   The testator's widow at her death in 1919 left the residue of her estate to her three daughters and Francis R. Austin.   As he had died without issue, the three daughters succeeded to the widow's interest in the testator's intestate property.

On June 9, 1942, Ida, Emily, and Mary were all at least sixty-four and unmarried.   The possibility of their having issue was extinct and it was recognized that the whole interest in the trust property after their life estates constituted intestate property of the testator's estate.

In 1942, by compromise agreement approved by the Probate Court, the trustees set aside portions of the trust property corresponding to the interest of each sister and of the estate of Francis R. Austin as a separate trust, to pay the income of all the trusts in equal shares to such of the three sisters as were living from time to time until the death of the last survivor.   At the death of the first sister to die, the trustees were to pay over to her executors or administrators, out of the principal of the property set apart for her, the additional Federal estate tax imposed on her estate by reason of the inclusion in her taxable estate of her interest

in the principal of the trust property. A similar provision was made with respect to the death of the second to die of the three sisters. Upon the death of the last survivor of the sisters, the principal of each trust was to be paid over and distributed to the executors or administrators of the estate of the daughter for whom that principal had been set aside.

Ida died in 1943, and Emily died in 1946, each without issue. Mary died on April 21, 1952, intestate, leaving as her only heirs at law four cousins, three of whom were inhabitants of the Commonwealth. Ida and Emily each disposed of their interests in the trust property by will, in effect, to such of certain specified persons or their issue as should be living at the distribution of the trust property, that is, the death of the last survivor. In the view we take of the cases, it makes no difference whether the interests of the legatees at the deaths of Ida and Emily, respectively, were, in a technical sense, contingent or vested subject to be divested.

In 1952, after the death of Mary, the trustees sold certain securities representing a part at least of the interest of the estate of each of the sisters. If, as the trustees contend, the basis for determining gain or loss (the tax basis) upon each of these sales was the value of the securities at the date of Mary's death, the sales in each trust were made at a loss. The sales were made at a gain, if, as the commission argues, the tax basis was (a) the value of the property held by the trustees on January 1, 1916, or the cost of such property, whichever was greater, and (b) the cost of such property as was purchased by the trustees on or after January 1, 1916. Income taxes were assessed on each trust (on the basis of the commission's contention) and were paid with interest on the dates and in the sums indicated in the margin.[2] Ap-

| [2] Trust. | | | Date of payment. | Amount of tax. | Interest to date of payment. |
|---|---|---|---|---|---|
| Trust for Mary | . | . . | 9–28–53 | $11,003.11 | $220.06 |
| Trust for Ida | . | . . | 9–28–53 | 8,861.82 | 177.23 |
| Trust for Emily | . | . . | 9–28–53 | 9,216.09 | 184.32 |

In each instance only seventy-five per cent in interest of the persons entitled to the trust property to be distributed were inhabitants of Massachusetts and this circumstance was taken into account in the assessments.

plications for abatement were denied and appeals taken to the Appellate Tax Board. The pertinent statutes are also set out in the margin.[3]

The Appellate Tax Board in its opinion said: "At the time of the death of Mary . . . the trustees under . . . the will . . . were in possession of trust property which had passed to the three daughters, subject to the life interests therein . . . as intestate property . . . . At the time the trustees sold the trust property in question the persons who acquired a beneficial interest in said property were the heirs at law of Mary . . . and the legatees of Ida and Emily. Whatever they acquired was acquired by gift from . . . [the testator]. In our opinion, the date of his death is the date fixed by statute as the basis of determination of gain or loss . . . ." The trustees contend that this view of the situation was erroneous as a matter of law and that, instead, the board should have ruled [4] (a) that the persons for whom the trustees held the property sold when they sold it were respectively the next of kin of Mary and the legatees of Emily and Ida, and (b) that these persons acquired their interests, up to then uncertain and contingent, at the death

[3] So far as relevant, G. L. (Ter. Ed.) c. 62 provides: § 5 (c), as appearing in St. 1935, c. 481, § 1, "The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property . . . shall be taxed at the rate of three per cent per annum. . . ." (Statute 1953, c. 246, § 3, imposes an additional tax of three per cent on this type of income. Later amendments by St. 1954, c. 599, § 1; St. 1955, c. 635, § 2; St. 1956, c. 607, § 1; and St. 1957, c. 540, § 1, are not here applicable.) § 7 "In determining gains or losses realized from the sale of capital assets, the basis of determination in case of property owned on January first, nineteen hundred and sixteen, shall be the value on that date or the cost thereof, whichever is higher, and in case of property acquired by purchase thereafter, except as otherwise expressly provided, the cost thereof. If the property . . . *was acquired by gift*, the basis of determination of the gain or loss shall be the value on the date when it was *so acquired*." (Emphasis supplied. Later amendments by St. 1953, c. 654, § 41; St. 1954, c. 599, § 2; St. 1955, c. 618, § 1, c. 635, § 3; St. 1957, c. 446, § 1, and c. 540, § 2, are not here applicable.) § 10 "The income received by estates held in trust by trustees or other fiduciaries . . . under a trust created by a person who was . . . at the time of the creation of the trust . . . an inhabitant of the commonwealth . . . shall be subject to the taxes imposed by this chapter to the extent that the persons to whom the income from the trust is payable or for whose benefit it is accumulated are inhabitants of the commonwealth." (Later amendments by St. 1954, c. 387, § 1; St. 1955, c. 592, § 2, and c. 780, § 3; and St. 1957, c. 644, § 3, are not here applicable.)

[4] The trustees presented to the Appellate Tax Board appropriate requests for rulings, the denials of which have been assigned as error.

of Mary, so that the tax basis of the property sold was its value at her death. After Mary's death, an inheritance tax was paid to the Commonwealth in each of the estates of Mary, Emily, and Ida "based on the value of the respective interest each had in the [testator's] estate . . . [at] its value on the date of death of Mary."

1. For present purposes it makes no difference whether the trustees, after the approval of the compromise agreement, held the property in trust under the testator's will or under the compromise agreement. If the trustees held under the will, as a result of the absence of issue of any of the three sisters, there was a failure of the trust at the death of the last survivor or a reversion (see *Commissioner of Corporations & Taxation* v. *Bullard*, 313 Mass. 72, 76; Am. Law of Property, §§ 4.16–4.18) as a result of which the heirs at law of the testator were entitled to receive the trust property by intestacy. If there had been no compromise agreement, the property (either directly or through the estates of the testator and his widow) would have gone in the same proportions to the personal representatives of each of the sisters and of Francis R. Austin, just as it did under the terms of the compromise agreement, for, at the termination of the life estate of the last of the sisters to die, payment to the sisters in person would have been impossible. See *Lynde* v. *Vose*, 326 Mass. 621, 623.

Accordingly, we deal with the situation as one in which each sister had, at least at all times after 1942, an indefeasible future interest in her share of the principal of the trust property (distributable at the death of the last sister to die), received in part by each sister directly from her father by intestacy and in part from her mother by bequest. See *Boston Safe Deposit & Trust Co.* v. *Buffum*, 186 Mass. 242, 243–244; *Langlois* v. *Langlois*, 326 Mass. 85, 86–89; Restatement: Trusts, § 411, comments c, h, i; Scott, Trusts (2d ed.) § 411.2. Each sister could dispose of this interest by will and so much of it as was personal property would pass to her estate, if she died intestate. In the cases of Ida and Emily, the first two to die, their respective in-

terests passed by their wills to legatees to be ascertained at the death of the last survivor of the sisters. Mary's interest passed as intestate property at her death. The legatees of Ida and Emily and the heirs of Mary received their interests from the sisters, respectively. The Appellate Tax Board erred in thinking that whatever these legatees and heirs "acquired was acquired by gift from" the testator.

2. The Massachusetts income tax statute taxes income from trust property in the light of the nature of the interest and attributes of the beneficiary, the real person in interest. *First National Bank* v. *Commissioner of Corporations & Taxation*, 274 Mass. 583, 588. *Commissioner of Corporations & Taxation* v. *Second National Bank*, 308 Mass. 1, 2–5. See *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 81. If income taxable under c. 62 is received by trustees who are subject to the chapter and is distributable to or is accumulated for (see *Harrison* v. *Commissioner of Corporations & Taxation*, 272 Mass. 422, 425–426; *State Tax Commission* v. *Blinder*, 336 Mass. 698, 701) an inhabitant of Massachusetts or for a person treated by the statute as equivalent to an inhabitant, then G. L. (Ter. Ed.) c. 62, § 10 (see footnote 3, *supra*), provides for the assessment of tax upon such income to the trustees, based on the interest of the beneficiary. In the present cases, the immediate beneficiary of the proceeds of each sale of securities was the estate of the deceased sister which would receive the proceeds of the sale, but the ultimate beneficiaries of such proceeds are the legatees, in the estates of Emily and Ida, and the heirs at law in Mary's estate. The taxability of the gains, if any, upon these sales, therefore, depends in each instance upon whether the ultimate beneficiary (here an ascertained person) is an inhabitant of Massachusetts. See *First National Bank* v. *Commissioner of Corporations & Taxation*, 279 Mass. 168, 172. The extent of the taxable gain or loss must be measured in relation to the value of the securities at the date when such beneficiary's interest was "acquired" within the meaning of § 7 (see footnote 3, *supra*).

The present situation is closely similar to *Commissioner of Corporations & Taxation* v. *Ayer*, 323 Mass. 579, which dealt with two Massachusetts settlors, each of whom placed securities subject to a revocable trust. They each died without revoking. After their deaths, their respective trustees sold certain trust securities. The tax basis of the securities was held to be their value at the appropriate settlor's death. This court said (at pages 582–583), ". . . the statute [§ 7] makes the basis of determination of the gain the date the property was 'acquired by gift,' not the date when the beneficiaries became 'interested' in the property. Here until the death of the settlors their respective beneficiaries had acquired nothing certain. Until then their ultimate enjoyment of the property was doubtful, and there was no gift. . . . As long as the settlors lived . . . they . . . had substantial control over the property. That control continued until . . . the respective settlors died. That was when the respective beneficiaries 'acquired' the property 'by gift.' That fixed the date which the statute makes the basis of determination of the gain." This decision was plainly required, for the devolution of property subject to a revocable trust at the death of the settlor (although not a testamentary transfer, see *National Shawmut Bank* v. *Joy*, 315 Mass. 457; Restatement: Trusts, § 57; Scott, Trusts [2d ed.] §§ 57–57.2) was, in practical effect upon the remainder interests, the same as the transfer of property by will or intestacy. See also *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 81–83 (securities sold by an administrator or executor held "acquired by gift" at the decedent's death).

In the present cases, the ultimate beneficiaries of the sales could have no interest whatsoever in the securities prior to the death of the sister through whom they respectively claim. This circumstance disposes of the appeal of the trustees under the separate trust for the benefit of Mary. Those succeeding by intestacy to her estate clearly acquired their beneficial interest from her at her death. Using as the tax basis the value of the securities at Mary's death,

337 Mass. 203                                                    211

Second Bank-State Street Trust Co. *v.* State Tax Commission.

there was a loss on the 1952 sales, and no gains tax was due.

3. Because the interest of each legatee of Ida or Emily remained incomplete and uncertain until Mary's death, the trustees argue that the legatee acquired his interest then within the meaning of § 7. Because the legatee acquired an inchoate interest at the death of the sister through whom he claims, there is a rational ground for relating back to that date the acquisition of the interest, once it vests in possession. See *Brewster* v. *Gage,* 280 U. S. 327, 334.

The difficulties of analysis of the meaning of the word "acquired" in this situation are stated by Judge Learned Hand in *Van Vranken* v. *Helvering,* 115 Fed. (2d) 709 (C. C. A. 2), certiorari denied 313 U. S. 585. Prior decisions of this court construing § 7 afford slight assistance in this analysis (see *Allen* v. *Commissioner of Corporations & Taxation,* 272 Mass. 502, 505; *Parker* v. *Commissioner of Corporations & Taxation,* 258 Mass. 379, 381–383; *First National Bank* v. *Commissioner of Corporations & Taxation,* 274 Mass. 583, 587) with the exception of the *Ayer* (323 Mass. 579) and *Bingham* (249 Mass. 79) cases. No help is given here by administrative regulations or practice (which if long continued and if proved might have been helpful, see *DeBlois* v. *Commissioner of Corporations & Taxation,* 276 Mass. 437, 440; *Broadway National Bank* v. *Commissioner of Corporations & Taxation,* 321 Mass. 25, 28–30. Compare *Allen* v. *Commissioner of Corporations & Taxation,* 272 Mass. 502, 508–509; *Collector of Taxes of Boston* v. *Cigarette Service Co. Inc.* 325 Mass. 162, 167) or legislative history.

Federal income tax precedents are to be used with great caution in construing and applying G. L. (Ter. Ed.) c. 62, which in many important respects is very different (see Nichols, Taxation in Massachusetts [3d ed.] 467, 470–471; Barrett and Bailey, Income Taxes, § 1 at page 3, and § 401) from the Internal Revenue Code of 1954 and its predecessors. Here, however, help is gained from the cases dealing with the method of determining the tax basis of a contingent

interest under the Federal income tax laws.  See *Helvering* v. *Reynolds*, 313 U. S. 428, and the *Van Vranken* case, 115 Fed. (2d) 709.  See also *Maguire* v. *Commissioner of Internal Revenue,* 313 U. S. 1, 7; *Helvering* v. *Campbell,* 313 U. S. 15, 21–22.

In the early days of the Federal income tax act, the language of the statutes with respect to the tax basis of property received by bequest was very much less definite, until at least January, 1919, than that of § 7 of the 1916 Massachusetts act.[5]  It was not until 1920 that the Federal tax authorities issued administrative rulings (O. D. 727, 1920–3 C. B. 53; compare O. D. 694, 1920–3 C. B. 53) that the tax basis of securities delivered to a contingent remainderman under a testamentary trust was the value of the securities when he actually became entitled to receive them at the death of the life tenant, whereas the tax basis of securities delivered to a vested remainderman, whose remainder was subject to be divested, related back to the testator's death and was the value of the securities at that time.  There is thus no ground for saying that the Massachusetts statute copied the early Federal acts, or took over their meaning.  The Federal decisions have weight here only to the extent that they are persuasive as precedents.

Despite some variations in the language of the successive Federal revenue acts the 1920 rulings, mentioned above, were followed in general until the decision under the Revenue Act of 1934 in *Helvering* v. *Reynolds,* 313 U. S. 428, 431. There it was held (partly on the basis of new regulations which ran counter to the Treasury's prior administrative practice, see Mr. Justice Roberts's dissent at pages 437–441) that, upon the sale by a contingent remainderman

---

[5] See Revenue Act of 1913 (38 U. S. Sts. at Large, 166, 167); Regulations 33, Art. 4; Revenue Act of 1916 (39 U. S. Sts. at Large, 756, 757–758); Regulations 33 Revised, Supplement of January 2, 1919, T. D. 2690, Art. 4, pars. 41, 44; Revenue Act of 1918, § 202 (a) (40 U. S. Sts. at Large, 1057, 1060). See also Revenue Act of 1921, § 202 (a) (2), (3) (42 U. S. Sts. at Large, 227, 229) and Regulations 62, Art. 1563, which, incidentally, treated property acquired by bequest as including property acquired "as the result of a transfer . . . intended to take effect in possession or enjoyment at or after death," thus in effect adopting in advance the holding in the *Ayer* case.

(after the termination of a testamentary trust) of specific securities, previously owned by the testator and eventually delivered by the trustee in specie to the remainderman, the tax basis was the value of the securities at the death of the testator. The court also held (at page 434) that the basis of securities purchased by the testamentary trustee was the cost to the trustee. See also decisions dealing with the somewhat different language of the Revenue Act of 1928, *Maguire* v. *Commissioner of Internal Revenue*, 313 U. S. 1, 7–10; *Helvering* v. *Campbell*, 313 U. S. 15, 21–22, where the court said that in fixing the date, as of which was to be determined the tax basis of property acquired by bequest, devise, or inheritance, "distinctions between vested and contingent remainders . . . have no relevancy. Each remainderman has become the taxpayer because he has obtained . . . control of the property and has sold it. While the property is held in trust, the vested remainderman has no more rights of possession and control than the contingent remainderman. Yet each has acquired a property interest . . . [which] later ripens into full ownership . . . . [The] value of the property . . . when the taxpayer first acquires an interest in it has relevance to a subsequent determination of the gains or losses."

We see no substantive distinction between contingent interests and interests vested, subject to be divested, which should result in difference of treatment with respect to the date of acquisition for the purposes of § 7 of the Massachusetts income tax act, whatever may be the distinction's significance (see Am. Law of Property, §§ 4.35, 4.36; Gray, Rule against Perpetuities [4th ed.] §§ 99–110.1) for other purposes. Both types of interest are acquired in an inchoate way at the death of the testator (or settlor of a revocable trust) and ripen into ownership later. In the absence of a binding Massachusetts precedent, we conclude that the *Reynolds* and *Campbell* cases more nearly represent the legislative intention behind § 7 than the earlier Federal administrative rules (which these cases overthrew in effect as if they had been improvidently adopted in the first place).

*Pierson* v. *Commissioner of Internal Revenue*, 27 T. C. 330, affirmed 253 Fed. (2d) 928 (C. A. 3). Once the testatrices (Emily and Ida) here involved had died, and their control over their interests in the trust property had ceased, a sufficient interest passed to each legatee to warrant relating his acquisition, and the tax basis under § 7, back to the date of the death of the testatrix from whom he received his legacy.

This conclusion is not affected by the language in the *Ayer* case on which the appellants rely. That, of course, dealt only with the situation there presented by revocable trusts, still completely subject to the control of the settlors until their deaths (see Federal Regulations 62, Art. 1563, footnote 5, *supra*) removed the uncertainty whether any remainder interests would take effect as such.

For purposes of § 10 prior to its amendment by St. 1931, c. 456, § 1, substituting the word "uncertain" for "contingent," there was significance to the distinction between contingent interests and vested interests, subject to be divested. See *Commissioner of Corporations & Taxation* v. *Alford*, 282 Mass. 113, 117–119; *Commissioner of Corporations & Taxation* v. *Bullard*, 313 Mass. 72, 75; Nichols, Taxation in Massachusetts (3d ed.) 513–518. The 1931 amendment (see *State Tax Commission* v. *Blinder*, 336 Mass. 698, 701) was plainly intended to avoid giving, for tax purposes, undue weight to the technical distinction already discussed. Doubtless, if trust securities had been sold at a gain, after Ida's or Emily's death but before Mary died, the gains would have been taxable under § 10 as accumulated for persons with "uncertain" interests. Ida's and Emily's legatees, however, who eventually took those interests had a sufficient interest from and after the death of the testatrix from whom they took, so that their eventual interest can be said to have been "acquired" then for purposes of § 7.

It is not significant that inheritance taxes on the trust property passing through Emily's and Ida's estates were imposed at values determined at the date of Mary's death, when the succession (see *Dexter* v. *Commissioner of Corpora-*

*tions & Taxation*, 316 Mass. 31, 40–42) was completed. The inheritance excise, except by a compromise under G. L. (Ter. Ed.) c. 65, § 14, recently amended by St. 1953, c. 654, § 88, could not be determined until the legacies vested in possession and enjoyment. See G. L. (Ter. Ed.) c. 65, § 7.

4. The trustees may have purchased after Emily's or Ida's death some of the securities which in fact were sold after Mary's death. The tax basis of the securities so purchased will be their cost to the trustees. The legatees of Emily and Ida, respectively, could not have acquired any interest in these until they became part of the trust property.

5. Abatement of the tax paid by the trustees for the benefit of Mary upon the gains on the 1952 sales of securities is to be made in the sum of $11,223.17 (which includes interest to the date of payment of the tax) with costs. The appeals of the trustees for the benefit of Emily and the trustees for the benefit of Ida are remanded[6] to the Appellate Tax Board to determine the tax basis of the securities sold (that is, values at the dates of death of Emily and Ida, respectively, and cost to the trustees of later purchased securities) and for further proceedings consistent with this opinion. The appellants are to have costs of these appeals.

*So ordered.*

---

[6] The parties stipulated before the board that there should be later opportunity to introduce further evidence on this issue if this court held that the tax basis should be determined otherwise than as done in the tax returns or by the action of the commission. The appellants should not be penalized for failure of proof.