**SCA DISPOSAL SERVICES OF
NEW ENGLAND, INC.**

v.

**STATE TAX COMMISSION**

**No. 75056**

Appellate Tax Board
District of Massachusetts

**September 4, 1980**

Harold Hestnes and John M. Westcott, Jr., for the appellant.

Joseph L. Hachey, Jr., for the appellee.

This is an appeal under the formal procedure pursuant to chapter 64H, sec. 22 and chapter 64I, sec. 23, from the refusal of the appellee to abate an excise assessed pursuant to chapter 64H and 64I for the year 1972. These findings of fact and report are made pursuant to chapter 58A, sec. 13, at the request of the appellee.

## FINDINGS OF FACT
## AND REPORT

SCA Services, Inc., (SCA Services) was a Delaware corporation with several wholly-owned subsidiaries, five of which, all Massachusetts corporations, are involved in this case and being: Howard Disposal Corporation (Howard), K & B, Inc. (K & B), Milano Bros. (Milano), Banco, Corp. (Banco) and Solid Waste Disposal Corp. (Solid Waste). Howard, K & B, Milano and Solid Waste were all merged into Banco, whose name was changed to SCA Disposal Services of New England, Inc. (SCA Disposal) who is the appellant in this case, with a usual place of business at 140 Brookline Avenue, Boston, Massachusetts.

The Board's jurisdiction to hear this case having been determined by the Supreme Court, reference to jurisdictional facts are omitted. **SCA Disposal Services of New England, Inc. v. State Tax Commission,** 1978 AS 1451.

The merger resulted in a transfer of all the assets and liabilities of the constituent corporations to the appellant, SCA Disposal. Conveyed to the appellant were 72 motor vehicles of which 68 were owned and registered in the name of Howard, one in the name of K & B, and three in the name of Milano but none from Solid Waste. The 72 motor vehicles were registered in the appellant's name and a sales tax in the amount of $14,372.17 was imposed on the transfer under chapter 64H and 64I by the Sales and Use Tax Bureau.

In evidence are the "Articles of Consolidation Merger," the "Agreement of Merger," and a document entitled "Addition to Departmental Memos, Sales and Use Tax Bureau, RE: Motor Vehicles - No. 3." The latter is a policy statement made by the Commissioner which was in full effect at the time of the merger.

All of the corporations involved in the merger were in the business of waste removal and under the complete control of SCA Services, the parent corporation. All were licensed by our Department of Public Utilities (D.P.U.).

However, the existence of six separate licenses under common control was inconsistent with D.P.U. regulations and SCA Services was required by the D.P.U. to merge the six into one corporation. Some were merged vertically and some horizontally depending on federal tax consequences. In the case before us, horizontal mergers were effected, i.e., wholly-owned subsidiaries of the same parent were merged into another wholly-owned subsidiary.

A knowledgeable witness, an attorney familiar with the transaction, was not allowed, upon objection, to state whether or not any "consideration" was given in the transaction but was allowed to testify without objection from the appellee that no "payment" or "anything of value" was given, "nor was any debt extinguished" in connection with the transfer of the motor vehicles. No significant tax benefits accrued to SCA Disposal as a result of the merger and there was no increase in the value of SCA Service's stock, the transaction being reflected on SCA Service's consolidated financial statement as a transfer of assets from one subsidiary to another. The stock of the constituent corporations, whose activities terminated under separate corporate from, was cancelled but no cash or stock was exchanged.

Thus the board finds that the transaction's culmination was that SCA Services, the same owner to start with, ended up holding substantially the same interest in substantially the same assets as it held before the merger. For our purposes, and in a certain sense, this was like a "paper transaction"; mostly form, little substance. Of course, the board has not overlooked the fact that for other purposes the event had vast importance and presented all the difficulties and problems involved in a corporate reorganization of this magnitude and complexity. Yet, in its execution, "consideration" for a motor vehicle was probably the least of the concerns of the parties.

## OPINION

The issue in this case is whether or not the transfer by operation of law, of a motor vehicle between a wholly-owned subsidiary corporation to another wholly-owned subsidiary corporation with a common parent and as a result of a merger is subject to the sales or use tax.

Chapter 64H, taxing retail sales of tangible personal property, and chapter 64I, taxing the use of the property, are complementary taxes. When the sales tax does not apply, in certain instances, a use tax may apply.

Under chapter 64H, section 1(12) (a), "sale" or "selling" is defined as "any transfer of title or possession, or both, exchange, barter, lease, rental, conditional or otherwise, of tangible personal property for a consideration, in any manner or by any means whatsoever."

However, chapter 64H, section 6C exempts from the sales tax "Casual and isolated sales by a vendor who is not regularly engaged in the business of making sales at retail; provided, however, that nothing contained in this paragraph shall be construed to exempt any such sales of a motor vehicle or trailer, as defined in section one of chapter ninety ... from the tax imposed under chapter 64I."

Referring to chapter 64I, section 2, we find an excise "imposed upon the storage, use or other consumption in the commonwealth of tangible personal property purchased from any vendor for storage, use or consumption within the commonwealth."

Yet, exempt from the use tax, under chapter 64I, section 7, are sales taxed under 64H and sales exempt from taxes under chapter 64H "provided, however, that in the case of the purchase of any motor vehicle or trailer, as defined in section 1 of chapter 90, ... a purchaser

thereof, except when said purchaser is the spouse, mother, father, ... shall pay the tax imposed by this chapter."

Thus, as "a casual sale," transfers of the vehicles in this case were not subject to the sales tax but could be subject to the use tax. There being no specific exemption of the transfers, the transfer would be subject to the use tax if all the criteria for the application of the use tax are found present.

The appellant argues that chapter 64H and 64I do not apply to the transaction involved because no consideration was paid by the transferee or received by the transferor and that in the absence of consideration there was no "sale" as defined in chapter 64H.

In turn, the appellee argues there was "consideration" and "a sale" and although exempt as a casual sale under 64H, the transaction was taxable under 64I, the "complementary" tax.

The question of the taxability of the transfer of property by operation of law in corporate mergers has given rise to difficulties in the application of the sales and use taxes from the very start.

On April 1, 1966, a memorable date, the first sales tax took effect in Massachusetts. On November 21, 1966, less than nine months later, the difficulty of applying the sales tax to corporate mergers was recognized and addressed by the then Commissioner of Corporations and Taxation by the promulgation of Exhibit 3. The rule stated therein was applied by the State Tax Commission ever since and reads in part:

"Mergers. Where a transfer of a motor vehicle is made from a **wholly owned subsidiary to the parent** as a merger, no taxable event occurs and registrations will be processed by Bureau offices. Form ST-7ER would be used.

**Note.** This exemption would not apply unless the motor vehicles involved were already registered in the commonwealth or had been registered in the commonwealth prior to transfer. If there is any question as to a merger, forward copy of merger papers to main sales tax office. In case of other type mergers, at present collect tax and if taxpayer desires, an abatement claim may be filed with full details of merger and contentions as to why exemption claim is made."

Thus, in spite of a great sweep of the language of the statute and the apparent wide scope of activities to be treated as taxable, which language appellee now argues strenuously is absolutely decisive in this appeal, the Commissioner, nevertheless, exempted from taxation the transfer of a motor vehicle in a "vertical merger." This policy was actually applied to this appellant where the merger involved was "vertical."

The question arises, then, what was the reason for the Commissioner to issue and implement this rule exempting from the sales tax the transfer of motor vehicles in a "vertical" type merger?

The initial implementation of this new, complex and highly controversial law required immediate clarification. Thus, although without any specific statutory exemption and in the absence of any case law, the Commissioner made a legal determination in the matter and iniated his Departmental Memo No. 3 very early in the law's administration.

Without addressing the question as to whether this "memo" rises to the status of a "regulation," the board believes that its long and consistent application is entitled to weight. See **First National Bank** v. **The Commissioner of Corporations & Taxation,** 274 Mass. 583, 587.

In the board's opinion, that memo correctly states the law and an exemption from taxation exists under the facts on the ground that "no taxable event occurs" and that no "sale," as that word is used in the statute, took place.

Authority, at that time, for such an interpretation can be found in **National**

**Dairy Products Corp.** v. **Gleason,** 16 D & C 2d 390 (1958) (Gleason), a Pennsylvania decision under laws providing for both a sales tax and merger similar to our Massachusetts laws.

**Gleason** held that the transfer of a motor vehicle from a subsidiary to a parent pursuant to a merger was not a sale at retail within the meaning of the statute because there was no consideration which passed from the parent to the subsidiary. The court said:

"When we apply the principles which we have discussed here to the facts in this case, it becomes apparent that the subsidiary corporations have received nothing in exchange for the title which was passed to the surviving corporation, plaintiff herein. The title of these motor vehicles under the statutes and under the plans of merger passed when these plans of merger became effective on May 31, 1957, whereupon the subsidiary corporations under the plain language of our Business Corporation Law and the applicable Delaware statute ceased to exist. Nothing, then, of legal value could have moved from the surviving to the constituent corporations because the latter, as subsidiaries, went out of existence at the same time that plaintiff acquired title to these vehicles. **Ibid.,** at pp. 405-406."

Furthermore, as was stated by our Supreme Court with a citation of cases in **Commissioner of Corporations & Taxation** v. **Dalton,** 304 Mass. 147, 150, " ... judicial inquiry is not limited by the forms or methods employed but looks beyond to ascertain the real substantial nature of the transaction that resulted in the transfer of property."

The question of whether any transaction is a mere matter of form or has substance for tax purposes can be determinative of whether a tax attaches. The application of this principle frequently results in the imposition of a tax where on form and appearances none was due. **Gregory** v. **Helvering,** 293 U.S. 465. The principle should work both ways and to the benefit of the taxpayer as well as to his detriment. The board has found that the transaction involved in this appeal, for purposes of the sales tax, was largely one of form and relatively little substance and the same can be said about the difference between a vertical merger and a horizontal merger for the purposes of taxation.

As was said in **Mass. Society of Tobacco Distributors** v. **State Tax Commission,** 354 Mass. 85, 89, "On the merits, the decision is not difficult. A tax statute must be strictly construed and 'all doubts are to be resolved in favor of the taxpayer.' " **Bolster v. Commissioner of Corps. & Taxn.** 319 Mass. 81, 85. See **Gordon v. State Tax Commn.** 335 Mass. 431, 437; **State Tax Commn.** v. **John Hancock Mut. Life Ins. Co.** 341 Mass. 555, 565. In addition, "It is a familiar principle of statutory interpretation that tax laws are to be strictly construed against the taxing power. If the right to tax is not plain, it is not to be implied. Doubts are resolved in favor of the taxpayer. **Eaton, Craine & Pike Co.** v. **Commonwealth,** 347 Mass. 523 at 530." Surely the Commissioner thought the right to tax in the vertical merger situation was not plain. Certainly it is equally clear that the right to tax in a horizontal merger is not plain. See also **Blumenthal** v. **Blumenthal,** 303 Mass. 275, 276 and 277. **Deputy** v. **DuPont,** 308 U.S. 488; **McAdam** v. **Federal Mutual Liability Insurance Co.,** 288, 537; **Cabot** v. **Commissioner of Corporations & Taxation,** 267, 338 and 340; **Hill** v. **Treasurer and Receiver General,** 229 Mass. 474, 475 and 476.

The Commissioner obviously recognized in Memo No. 3 that an exemption in other types of merger might be in order also, as indicated by his direction as to how to handle other types of mergers.

The board is not saying that the

appellant's motive of complying with D.P.U. regulations or that transfers of vehicles by operation of law made the event tax exempt, but rather that under all the facts and circumstances of this case and according to our understanding and perception of the law there was no "sale at retail" nor any "purchase."

This is not a case of an "exemption" in the true sense, but a question of whether or not a taxable event occurred in the first place. See **Wakefield Ready-Mixed Concrete Co. v. State Tax Commission,** 356 Mass. 8.

In summary the board accepted the validity of the rule enunciated in Memo No. 3 and adopted as one rationale that stated in **Gleason.** Also on the basis of our analysis of the special circumstances in this case with particular emphasis on the difference between form and substance, both with respect to the transaction itself and the difference between "vertical" and "horizontal" mergers, the board concluded that there was no basis for the appellee's application of the statute. Appellant's transaction was too tenuous to tax.

Our decision for the appellant was promulgated March 19, 1979.

**APPELLATE TAX BOARD**