OLD COLONY TRUST COMPANY, trustee, *vs.* COMMISSIONER OF CORPORATIONS & TAXATION.

Middlesex.   December 5, 1963. — January 10, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Taxation,* Succession tax. *Trust,* Taxation.

Whether "full consideration in money or money's worth" within G. L. c. 65, § 1, was received by one for remainder interests taking effect in possession or enjoyment at his death under an irrevocable trust established by him as part of a bona fide settlement at arm's length of genuine disputes between him and others, and so whether the remainder interests were exempt from the succession tax, was to be determined by a comparison of the value at the time of the settlement of what he received through concessions made to him therein with the value at that time of what he gave up therein, including the remainder interests, rather than with the value at the time of his death of what he gave up.

PETITION filed in the Probate Court for the county of Middlesex on July 11, 1963.

The case was reported by *Leggat,* J.

*Samuel B. Potter* for the petitioner.

*Edward W. Brooke,* Attorney General, *& Herbert E. Tucker, Jr.,* Assistant Attorney General, for the respondent, submitted a brief.

CUTTER, J.   This is a petition in equity (G. L. c. 65, § 30) to determine whether any State inheritance tax is due under G. L. c. 65 with respect to the irrevocable trust under an indenture, dated May 1, 1951, of Emeric de Pfluegl (the settlor) by reason of his death on February 15, 1956. He was

then a citizen of the United States and a resident of Massachusetts. The case was reported, without decision, by the probate judge upon the pleadings and a statement of agreed facts.

On September 14, 1946, the settlor's wife Harriette died survived by her husband and by three children of a former marriage, Leonardo Mercati, Atalanta Mercati Arlen and Daria Mercati Palmer (hereinafter collectively referred to as the Mercatis). Prior to his wife's death, the settlor had written to her a letter, which was interpreted by the Mercatis as obliging the settlor to return to the Mercatis the securities and real estate left to him by his wife. The settlor denied the Mercatis' interpretation of his letter. As a consequence, settlement of Mrs. de Pfluegl's estate consumed about five years. This delay was "occasioned by disputes between the . . . [settlor] and . . . the fiduciaries and children of Mrs. de Pfluegl. These disputes were bona fide, were negotiated at arm's length, and in February, 1951, were settled in good faith."

It would serve no useful purpose to set out in this opinion the details of this settlement, in which the settlor and the Mercatis made concessions. Among the concessions made by the settlor was the establishment of the 1951 irrevocable trust which, in effect, (1) provided a $3,500 annuity for the settlor during his life, and (2) at his death, gave the trust property for Mrs. de Pfluegl's grandchildren, the remainder beneficiaries who were selected by the Mercatis. The present petitioner (the trustee) in its brief computes the value of the concessions on each side as of the date of the creation of the 1951 irrevocable trust. It contends that the settlor conceded items having a 1951 value of about $130,141 and received concessions from the Mercatis of a 1951 value of about $139,203. The trustee seems to admit that the items conceded by the settlor in 1951 had increased in value by 1956, when the settlor died, so that their 1956 value was $203,419.[1]

---

[1] The commissioner's brief does not specifically deal with or dispute these computations by the trustee. It merely states that the value of the trust fund subject to the 1951 irrevocable trust was $127,952 and that its value in 1956 at

In the light of the agreed facts we conclude that, as of 1951 when the settlement was made, the settlor received somewhat more (in 1951 value) than the 1951 value of what he gave up, whereas, the value, at the settlor's death in 1956, of what he had given up in 1951 was greater than the 1951 value of what he received. As in almost any arm's-length settlement, it is impossible (see fn. 5, *infra*) to place a precise dollar value upon each item entering into the compromise or to appraise with complete accuracy (either at the time of settlement or after the event) the validity of each party's position in respect of each item of dispute.

The settlor's representatives have filed with the commissioner appropriate "forms . . . showing the value as of the date of death of . . . [the settlor's] property, the debts and expenses of the estate, and other pertinent information. No reference to the . . . 1951 [irrevocable] trust has been made in any official form or other report submitted to the . . . [commissioner]. A payment on account of taxes due under . . . G. L. c. 65 with respect to the estate of . . . de Pfluegl was made on February 26, 1957, in an amount sufficient to pay substantially all such taxes, provided that the . . . property of the . . . 1951 trust is not subject to any such tax. . . ." The commissioner knows of the existence of the trust. He "has taken the position that the . . . trust is subject to tax under G. L. c. 65 by reason of the death of" the settlor.[2]

The pertinent statute is G. L. c. 65, § 1 (as amended through St. 1955, c. 596), which so far as relevant, reads: "All property . . . and any interest therein . . . which shall pass by . . . deed, grant or gift, *except in cases of*

---

the settlor's death was $185,668. It also says that the Mercatis, "as an inducement to the settlor to compromise [the dispute] . . . paid to the settlor or withdrew claims against him in the approximate amount of $160,000." In any event, the commissioner's brief states the issue as "[w]hether the value of consideration for the transfer . . . is to be compared to the value of the property at the time of transfer or . . . at the . . . [settlor's] death."

[2] The settlor in 1952 established a revocable inter vivos trust of other property owned by him for the benefit of himself for life and thereafter for the benefit of persons unrelated to his then deceased wife. There was a probate estate of about $11,440.

*a bona fide purchase for full consideration in money or money's worth* . . . made or intended to take effect in possession or enjoyment after his death, . . . shall be subject to a [succession] tax . . ." (emphasis supplied). The trustee concedes that the remainder interests in the 1951 irrevocable trust property did "take effect in possession or enjoyment after . . . [the settlor's] death," but argues that the transfer was "for full consideration in money or money's worth." The trustee further contends that the sufficiency of the consideration must be determined by comparing (a) the 1951 value of what the settlor received as consideration in 1951, against (b) the 1951 value of what he gave up in 1951. The commissioner, on the other hand, relying on statements in two older Massachusetts decisions (statements which the trustee argues were not necessary to those decisions), contends that the 1951 value of the consideration received by the settlor in 1951 must be compared with the value of the property subject to the 1951 irrevocable trust at the date of the settlor's death in 1956. The trustee relies largely upon decisions under the Federal estate and gift tax statutes. See e.g. Int. Rev. Code of 1954, §§ 2036, 2037, 2043.[3]

The Federal estate tax provisions comparable to G. L. c. 65, § 1, as amended, in general do not impose any tax with respect to otherwise taxable transfers, if the transfer is a "bona fide sale for an adequate and full consideration in money or money's worth." The cases under the Federal act seem to assume that the adequacy of the consideration "in money or money's worth" will be measured at the time of the bargain giving rise to the contention that the transfer was for full consideration. See *Bensel,* 36 B. T. A. 246, 253–254, affd. sub. nom. *Commissioner of Int. Rev.* v. *Bensel,* 100 F. 2d 639 (3d Cir.); *Helvering* v. *United States*

---

[3] There are obvious differences between the Federal statutes and G. L. c. 65, § 1, as amended. The latter, for example, contains no provisions like those found in Int. Rev. Code of 1954, § 2043 (a), relating to transfers for less than full consideration under the estate tax, and § 2512 (gift tax). See as to certain problems presented by what is now § 2043 (a), *Helvering* v. *United States Trust Co.* 111 F. 2d 576, 578–579 (2d Cir.). Cf. *D. G. McDonald Trust,* 19 T. C. 672, 688–690.

*Trust Co.* 111 F. 2d 576, 578–579 (2d Cir.); Mertens, Federal Gift and Estate Taxation, §§ 5.01–5.11, 5.20–5.23; Paul, Federal Estate and Gift Taxation, §§ 7.06 at p. 302, 16.14; Ness, Federal Estate Tax Consequences of Agreements and Options to Purchase Stock on Death, 49 Col. L. Rev. 796, 804; note, 70 Harv. L. Rev. 1486.[4] This assumption is consistent with the normal view of consideration as constituting what each party to a bargain gives up to the other (or at the other's direction) determined at the time of the bargain.

If the adequacy of consideration may not be determined on the basis of market values at the time of the bargain, the parties to the bargain cannot predict the estate or inheritance tax consequences of the bargain. In the case of a transfer for full consideration at the date of the bargain, if the value of the taxpayer's transfer of a remainder interest must be determined as of his death and if the value of the consideration received by the taxpayer must be determined as of the date of the transfer, taxability will depend on a fortuitous circumstance, viz. whether the value of the transferred property has gone up or down between the date of the transfer and the date of the taxpayer's death. The consequence will be that there will be a tax if the value went up and no tax if the value went down. The Federal cases do not appear to have reached any such anomalous and irrational result.

---

[4] For cases discussing generally what will be regarded as adequate consideration under the Federal estate and gift tax acts, see *Commissioner of Int. Rev.* v. *Wemyss,* 324 U. S. 303, 306–308; *Merrill* v. *Fahs,* 324 U. S. 308, 312–313; *Commissioner of Int. Rev.* v. *Marshall's Estate,* 203 F. 2d 534, 536–537 (3d Cir.); *Estate of Barnard,* 9 T. C. 61, 66–67; *Beveridge,* 10 T. C. 915, 918; *Estate of Goetchius,* 17 T. C. 495, 504–505; *Estate of Friedman,* 40 T. C. 714, 718–720. See also *Harris* v. *Commissioner of Int. Rev.* 340 U. S. 106, 108–112; *Greene* v. *United States,* 237 F. 2d 848, 853–854 (7th Cir.); Casner, Estate Planning (3d ed.) pp. 194–195. Cf. *Housman* v. *Commissioner of Int. Rev.* 105 F. 2d 973, 975 (2d Cir.). Some Federal cases in measuring the value of a future interest as consideration, have taken into account as evidence the actual length of life of a life beneficiary (as well as life tables, some of which are out of date). See *Nourse* v. *Riddell,* 143 F. Supp. 759, 760 (S. D. Cal.); *Estate of Denbigh,* 7 T. C. 387, 389. This appears, however, to be done only as a matter of obtaining from the actual experience evidence of life expectancy, a practice which was persuasively and adversely criticized in the note in 70 Harv. L. Rev. 1486.

Whether the purpose of taxing various inter vivos transfers under the Federal estate tax and gift tax statutes and under G. L. c. 65 is to prevent death tax avoidance or to tax substitutes for testamentary disposition (see *United States v. Wells,* 283 U. S. 102, 116–117; Paul, op. cit. §§ 7.04, 7.05), an inter vivos transfer made in an arm's-length bargain for consideration, then completely adequate in money's worth, does not come within either of these possible purposes. Where the transferor receives, at the time of the transfer, at least equal value in money's worth[5] in return for his transfer of a future interest, his estate is not diminished (see Paul, op. cit. § 16.14, at pp. 1114–1115) and he does not effectively avoid the death taxes because the consideration received by him (unless he loses it, spends it, or gives it away) will augment his estate. In such circumstances, his bargain does not seem to be intended as a substitute for a testamentary disposition. Indeed, to impose an estate or inheritance tax, both upon the future interest transferred and upon the adequate consideration, will necessarily involve double taxation. An intention to impose double taxes is not lightly to be attributed to the Legislature. See *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 439–440; *Curtis* v. *Commissioner of Corps. & Taxn.* 340 Mass. 169, 173. Cf. *O'Brien* v. *State Tax Commn.* 339 Mass. 56, 62–63.

We turn now to the Massachusetts cases.[6] Upon lan-

---

[5] The Federal decisions do not treat as full consideration in money's worth the settlement of insubstantial claims. See *Housman* v. *Commissioner of Int. Rev.* 105 F. 2d 973, 975 (2d Cir.), cert. den. 309 U. S. 656; Paul, Federal Estate and Gift Taxation, § 16.14, p. 1115. See also *Bailey* v. *Ratterre,* 144 F. Supp. 449, 453 (N. D. N. Y.), affd. 243 F. 2d 454, 455 (2d Cir.). In the case of true arm's-length bargains, the Federal decisions treat unliquidated claims as having a value equal to the value of the property for which they are exchanged. See *United States* v. *Davis,* 370 U. S. 65, 72 (taxable gain for income tax purposes determined by treating release of marital rights in a pre-divorce settlement as having the value of the property for which the release was exchanged); *Commissioner of Int. Rev.* v. *Mesta,* 123 F. 2d 986, 988 (3d Cir.); *Commissioner of Int. Rev.* v. *Halliwell,* 131 F. 2d 642, 643 (2d Cir.); *Beveridge,* 10 T. C. 915, 918; *Estate of Friedman,* 40 T. C. 714, 720.

[6] We recognize, of course, that in dealing with Massachusetts taxes, Federal decisions must be used with caution. See *Second Bank–State St. Trust Co.* v. *State Tax. Commn.* 337 Mass. 203, 211–212; *Allen* v. *State Tax Commn.* 337 Mass. 502, 506. Federal decisions, however, may be both helpful and persuasive where, as here, the statutory objective is closely similar to that of a Massachusetts tax provision.

guage found in two of these decisions, the commissioner's contentions largely rest. See *State St. Trust Co.* v. *Treasurer & Recr. Gen.* 209 Mass. 373; *Worcester County Natl. Bank* v. *Commissioner of Corps. & Taxn.* 275 Mass. 216.

The *State St. Trust Co.* case, *supra,* dealt with a trust of $100,000 created by Mrs. Lincoln, then in ill health, on January 19, 1910, in consideration of the undertaking of one Friebe (then 54) to resign a position paying him substantially $3,500 a year. She wished Friebe and his wife to make their home with her. Friebe resigned his position. Mrs. Lincoln died at the age of 73 on May 6, 1910. It was contended that the resignation and transfer in trust constituted "a bona fide purchase for full consideration in . . . money's worth." This court held (p. 379) that the inheritance tax statute required that "the consideration must be for the full value of the property, whether paid in money . . . or some benefit of an equivalent pecuniary measurement." The opinion proceeds (p. 380), "If services . . . to be rendered constitute the consideration . . . their value may be . . . ascertained, and where in 'money's worth' they equal or exceed the fair value of the property at the death of the transferor, no tax can be imposed." The court concluded that Friebe's prospective services (based upon the capitalization of his former earnings over his expectation of life) did not equal "one half of the cash value [not less than $90,000] at her death of the bonds," and thus the transaction was not for full consideration.[7] It would have made no difference whether the consideration given by Friebe and the bonds transferred by Mrs. Lincoln were taken at their value as of the creation of the trust or as of the date of Mrs. Lincoln's death. The consideration promised by Friebe, in either event, would not have been adequate and full in money's worth.

[7] Even under the Federal cases, this arrangement presumably would not have been treated as one for a full consideration. There was a withdrawal of funds from Mrs. Lincoln's estate without any substantial compensatory addition to that estate from Friebe, although there was an obvious detriment to him. See *Commissioner of Int. Rev.* v. *Wemyss,* 324 U. S. 303, 307–308; Paul, Federal Gift and Estate Taxation, § 16.14, pp. 1113–1115.

The *Worcester County Natl. Bank* case (275 Mass. 216) dealt with a trust of one Wallace (then 63), who in 1919 contemplated marriage with Alice Geldert. His total assets then amounted to about $1,100,000. He and Alice Geldert agreed in writing (pp. 219–220) that he would create a trust of securities (worth $71,700 at the inception of the trust and $124,500 at Wallace's death). The income was to be paid to him for life and the principal was to be paid to her at his death without regard to whether the marriage had taken place. She was to accept the trust provisions in full satisfaction of all her marital rights and all claims against his estate. The marriage took place in 1919, and the couple lived together until Wallace's death in 1927. By this transaction and other gifts made in 1919 with Alice Geldert's consent, Wallace reduced his property to about $225,000. This court held (pp. 221–225) that there was not "a bona fide purchase for full consideration in money or money's worth," although (p. 222) there was a "bona fide purchase." The court then stated that "the time of . . . [Wallace's] death . . . was the same as the time, after the expiration of a life estate, the beneficiary became 'entitled to the . . . [property] in possession or enjoyment.' The value at this time is the measure of the benefit resulting to . . . [the former Alice Geldert] from her coming into possession or enjoyment of the property." The court (pp. 222–223) cited the *State St. Trust Co.* case as authority for the principle that "the consideration in 'money's worth' must 'equal or exceed the fair value of the property at the death of the transferor' if no tax is to be imposed," and that exemption must be denied if "the consideration was 'insufficient in amount to equal' the value at the death of . . . [Wallace] of the property passing to" his widow.[8] The court (p. 224) declined to decide whether marriage was "consideration in money or money's worth" because the

---

[8] The court went on to say (at p. 223), "Unless, therefore, the 'consideration in money or money's worth,' when it passed from the beneficiary, was at least equal in value to the trust property, when she became entitled to possession or enjoyment thereof, she derived a taxable benefit from the succession."

facts agreed did "not show the value, if any, measured in money of" the marriage. As to the other consideration, the court said, "Whether this consideration — which did not tend, even indirectly, to swell . . . [Wallace's] estate — was 'consideration in . . . money's worth' . . . need not be decided, for those rights . . . if not released, would *at no time* have had a value, measured in money of $124,500" (emphasis supplied), the value of the trust fund at Wallace's death. Examination of the original record in the *Worcester County Natl. Bank* case shows that the agreed facts did not establish the value of the rights surrendered by Alice Geldert in 1919, so there was no proof that the value of the released rights was as much as the value of the trust property in 1919. There was thus no occasion for deciding whether the value of the transferred property was to be measured at the date of the bargain which caused the transfer or at Wallace's death.[9]

The *Worcester County Natl. Bank* decision rests largely upon the earlier *State St. Trust Co.* case. That earlier case assumes that, because the occasion for the imposition of a succession tax was the taking effect of the remainder interest in possession and enjoyment, the value of the property transferred must be taken at its value at Mrs. Lincoln's death rather than its value at the inception of the trust. This assumption, we think, was unwarranted. Nothing in the statute itself requires that the adequacy of consideration be measured at the date of the taxable succession rather than at the time of the bargain. The bargain, of course, was the arm's-length transaction in which the parties weighed what each was giving up and receiving. The discussion earlier in this opinion indicates the impossibility of computing, at the time of such a bargain, the death tax consequences of that bargain, if we adhere to any rule such as that mentioned in the *State St. Trust Co.* and *Worcester*

---

[9] Even under the Federal cases, upon the facts in the *Worcester County Natl. Bank* case, full consideration in money's worth would not have existed, because there was no substantial augmentation of Wallace's estate by the 1919 agreement (as well as because the rights released were marital rights, see Int. Rev. Code of 1954, § 2043 [b]).

*County Natl. Bank* cases. The usual concept of consideration is wholly inconsistent with measuring the benefit received by one party to a bargain at the time of the bargain and the benefit received by another party as of some uncertain future date. We think a different rule should be applied upon the present facts, not only in furtherance of the equitable purpose of the exception in G. L. c. 65, § 1, as amended (i.e. exempting transactions at arm's length for full consideration), but also for the avoidance of possible double taxation of the transferred property and of the consideration received for it. No statutory language shows any clear intention to resort to such double taxation.

We do not feel bound to adhere to language which was unnecessary to the two earlier decisions, respectively, and which passed upon an issue not really presented in either case. We think that the agreed facts in the present case bring the 1951 irrevocable trust within the clear purport of the exception to, or exemption (cf. *Akers Motor Lines, Inc.* v. *State Tax Commn.* 344 Mass. 359, 365, and cases cited) from taxability under G. L. c. 65, § 1, as amended. We hold that "full consideration in money or money's worth" for the 1951 irrevocable trust is to be found in the arm's-length settlement of the substantial claims (with international complications), seriously advanced by stepchildren (who were not treated by the settlor as natural objects of his bounty when he came to dispose of his own property, see fn. 2, *supra*).

A decree is to be entered declaring that no tax is due under G. L. c. 65 with respect to the trust property subject to the 1951 irrevocable indenture.

*So ordered.*