NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13767

COMMONWEALTH  vs.  DONTA LEWIS.


Suffolk.     October 10, 2025. - January 20, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Firearms.  Practice, Criminal, Sentence, Dismissal.  Statute,
    Construction.



Indictments found and returned in the Superior Court
Department on June 7, 2023.

A motion to dismiss was heard by Katie C. Rayburn, J., and
a motion for reconsideration was considered by her.

The Supreme Judicial Court granted an application for
direct appellate review.


Brynn M. Morse, Assistant District Attorney (Brian Collins
Spring, Assistant District Attorney, also present) for the
Commonwealth.
Patrick Levin, Committee for Public Counsel Services, for
the defendant.


WOLOHOJIAN, J.  In Commonwealth v. Resende, 474 Mass. 455

(2016), we interpreted the phrase "arising from separate

incidences" as it is used in G. L. c. 269, § 10G (§ 10G), the

Massachusetts armed career criminal act (ACCA or act), to mean that a defendant's prior convictions must be the result of "separate, sequential prosecutions" in order to qualify as predicate offenses for increased sentencing under the act (sequential prosecution rule).[1]  Id. at 469.  We further stated that prior convictions are "sequential" when "the first conviction (and imposition of sentence) occur[s] before the commission of the second predicate crime, and the second conviction and sentence occur before the commission of the third crime."  Id. at 466-467.

At issue in this case is whether Resende's interpretation of "arising from separate incidences" was obiter dictum.  We conclude that it was not; the court's interpretation of the phrase was necessary to the court's reasoning, analysis, and conclusion.  Furthermore, we conclude that the judge properly applied the sequential prosecution rule in this case, and we accordingly affirm the dismissal of so much of the defendant's indictment under § 10G (c) as alleges more than a single predicate offense.

Background.  The defendant was indicted on June 7, 2023, for carrying a firearm without a license, in violation of G. L.

---

[1] Although Resende, like this case, involved § 10G (c), the court noted that its analysis applies with equal force to § 10G (b).  Resende, 474 Mass. at 463 n.13.

c. 269, § 10 (a), and for being an armed career criminal by
virtue of having three prior convictions of "violent crimes" in
violation of G. L. c. 269, § 10G (c).[2,3]  The ACCA sentencing
enhancement portion of the indictment rested on earlier
convictions stemming from three prior prosecutions in which the
defendant pleaded guilty.  The first set of convictions stemmed
from the defendant's guilty pleas, on July 19, 2016, to having
committed assault and battery and assault by means of a
dangerous weapon on April 3, 2016.  The second conviction
stemmed from the defendant's guilty plea on March 1, 2017, to
having committed assault by means of a dangerous weapon on
August 15, 2015.  The third alleged prior conviction resulted
from the defendant's guilty plea on September 17, 2018, to
having committed armed robbery on January 10, 2015.  Thus, all

---

[2] The defendant was also charged with two counts of
possessing ammunition without a firearm identification card,
G. L. c. 269, § 10 (h); one count of unlawfully carrying a
loaded firearm, G. L. c. 269, § 10 (n); and two counts of
unlawful possession of a large capacity feeding device, G. L.
c. 269, § 10 (m).  While a charge under G. L. c. 269, § 10 (h),
is subject to enhancement under the ACCA, see G. L. c. 269,
§ 10G (a), the Commonwealth here did not seek enhancement of
that charge.

[3] The defendant does not challenge that his previous
convictions were for "violent crimes" for purposes of § 10G (e),
which defines "violent crime" by reference to G. L. c. 140,
§ 121 (in relevant part, "any crime punishable by imprisonment
for a term exceeding one year . . . that:  [i] has as an element
the use, attempted use or threatened use of physical force or a
deadly weapon against the person of another").  G. L. c. 269,
§ 10G (e).

the defendant's prior offenses took place before his first guilty plea and conviction.

The defendant moved to dismiss so much of the indictment as alleged more than one previous qualifying conviction on the ground that his prior convictions did not satisfy the sequential prosecution rule of Resende. A Superior Court judge denied the motion after a hearing, accepting the Commonwealth's argument that the sequential prosecution rule was not necessary to the decision in Resende and was only obiter dictum. The defendant then moved for reconsideration of the denial of his motion to dismiss, which the same judge allowed, concluding that the relevant language from Resende was in fact binding. We subsequently allowed the Commonwealth's application for direct appellate review.

Discussion. Section 10G of the ACCA provides for enhanced sentences for those who commit firearm offenses in violation of G. L. c. 269, § 10 (a), (c), or (h), having been previously convicted of a "violent crime or . . . serious drug offense." G. L. c. 269, § 10G. The act creates a three-tier scheme under which defendants face progressively greater sentences depending on whether they have one, two, or three prior qualifying convictions. See G. L. c. 269, § 10G (a)-(c). A defendant may only be sentenced under the ACCA's second or third tier if each

of the qualifying convictions "aris[es] from separate incidences."  G. L. c. 269, § 10G (b), (c).[4]

In Resende, we examined the ACCA's graduated penalty structure and, in particular, what is required for a prior conviction to "aris[e] from separate incidences" as that phrase is used in § 10G (b) and (c).  See Resende, 474 Mass. at 462-470.  The defendant in that case, Admilson Resende, had committed five drug offenses on five different days over a seventeen-day period.  Id. at 456.  All five offenses were charged in a single prosecution, and Resende pleaded guilty to

---

[4] In relevant part, the statute provides:

"(a) Whoever, having been previously convicted of a violent crime or of a serious drug offense, both as defined herein, violates the provisions of [G. L. c. 269, § 10 (a), (c), or (h),] shall be punished by imprisonment in the state prison for not less than three years nor more than [fifteen] years.

"(b) Whoever, having been previously convicted of two violent crimes, or two serious drug offenses or one violent crime and one serious drug offense, arising from separate incidences, violates the provisions of [G. L. c. 269, § 10 (a), (c), or (h),] shall be punished by imprisonment in the state prison for not less than ten years nor more than [fifteen] years.

"(c) Whoever, having been previously convicted of three violent crimes or three serious drug offenses, or any combination thereof totaling three, arising from separate incidences, violates the provisions of [G. L. c. 269, § 10 (a), (c), or (h),] shall be punished by imprisonment in the state prison for not less than [fifteen] years nor more than [twenty] years."  (Emphases added.)

G. L. c. 269, § 10G (a)-(c).

them in a single plea proceeding.  Id.  Subsequently, Resende was charged with various firearm offenses under G. L. c. 269, § 10, each of which carried a concomitant sentence enhancement charge under § 10G (c).  Id. at 456-457.  He was found guilty of the firearm charges after a bench trial.  Id. at 457.  After a separate bench trial on the sentencing enhancements, the judge found that Resende had been previously convicted of three or more serious drug offenses and imposed the mandatory minimum enhanced sentence under § 10G (c).  Id.  On appeal, Resende argued that because his previous drug convictions had been the result of a single prosecution, they should have been counted as a single predicate offense, subjecting him to the lesser enhancement under § 10G (a).  Id. at 462.

The court agreed and vacated Resende's convictions under § 10G (c).  Id. at 470.  The court's decision rested on its interpretation of the phrase "separate incidences," which it determined meant "separate, sequential prosecutions."  Id. at 469.  The court reached this interpretation based on three separate considerations.  Id. at 464.  First, the court noted that the Legislature departed from the language and structure used in the Federal armed career criminal act (Federal ACCA). Second, the court relied on its analysis of cases from other jurisdictions interpreting other States' armed career criminal

statutes.  Finally, the court was informed by the rule of lenity.  See id.

With respect to the first consideration, the court noted the Federal ACCA uses the term "committed on occasions different from one another," which Federal courts have interpreted as meaning that the prior convictions arose from "separate and distinct criminal episode[s]," whereas our Legislature eschewed the Federal language and used instead the phrase "arising from separate incidences."  Id. at 465, quoting United States v. Letterlough, 63 F.3d 332, 335 (4th Cir.), cert. denied, 516 U.S. 955 (1995).  In addition, the court noted that, as a matter of structure, the Massachusetts ACCA "shares less in common with the Federal ACCA than it does with a large number of armed career criminal sentencing statutes with graduated penalty provisions that have been enacted by other States."  Resende, 474 Mass. at 466.  Specifically, while the Federal ACCA imposes only one level of enhancement that comes into play after three qualifying prior offenses, 18 U.S.C. § 924(e), the Massachusetts ACCA "provides for three separate levels of enhancement, each with an increasing mandatory minimum sentence depending on the number of predicate offenses committed, up to a maximum of three."  Id.  The court concluded that these departures in language and structure indicated the Legislature's conscious intent to deviate from the Federal approach.  Id.

Second, the court looked to case law interpreting similar penalty enhancement statutes of other States and noted that the "majority view" was "that graduated sentence enhancement statutes should be interpreted to require sequential prosecutions and convictions of the predicate crimes." Id. at 466-467. The court's analysis of other States' jurisprudence led it to conclude that graduated penalty enhancement statutes reflect a "recidivist philosophy" in which escalating punishments are justified by a defendant's failure to reform after being punished. Id. at 466-468 and cases cited, 469 n.23. Against that backdrop, and given the linguistic and structural evidence of the Legislature's intent to deviate from the Federal ACCA's approach, the court concluded that

> "the most logical interpretation of § 10G (a)-(c) is one that reflects and implements the principle that penal discipline can have (or should have) a reforming influence on an offender, with enhanced consequences if prior convictions and sentences do not have such an effect. As a consequence, the most logical and appropriate interpretation of § 10G (c) is that its sentence enhancement of a mandatory minimum of fifteen years applies only when a defendant's previous convictions of three qualifying crimes 'arising from separate incidences' were the results of separate, sequential prosecutions." (Footnote omitted.)

Id. at 468-469.

Third, and finally, the court noted that "insofar as" the phrase "arising from separate incidences" was ambiguous, the

rule of lenity supported reading § 10G in favor of the defendant. Id. at 469-470.

Based on its interpretation of "separate incidences," the court concluded that Resende's previous convictions, which had all been part of a single prosecution and resolved in a single plea proceeding, "represented a single 'incidence' for purposes of § 10G." Id. at 470. Resende's sentence thus could be enhanced under § 10G (a), but not under § 10G (c). Id.

The Commonwealth now argues that the sequential prosecution rule announced in Resende was merely obiter dictum and thus does not bind us in deciding this case.[5] It rests this argument largely on the fact that Resende's prior convictions were not "separate" because they stemmed from a single prosecution resolved in a single plea; thus, the issue whether prior convictions must also be "sequential" did not need to be addressed to resolve Resende's case. See Resende, 474 Mass. at

---

[5] The Commonwealth suggested for the first time at oral argument that we should consider overturning Resende. While we need not address issues raised for the first time at oral argument, see Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019), we nevertheless note that the Commonwealth has not offered any reason beyond "mere disagreement with its analysis" to justify overturning Resende. Shiel v. Rowell, 480 Mass. 106, 109 (2018). Absent any suggestion that Resende's holding has caused "unforeseen problems" or become "antiquated" (citation omitted), see id., we see no reason to depart from the principle of stare decisis, particularly given the "enhanced force" the doctrine carries with respect to the construction of statutory language (citation omitted), Theisz v. Massachusetts Bay Transp. Auth., 495 Mass. 507, 521 (2025).

456.  On this basis, the Commonwealth contends that the sequential prosecution rule was obiter dictum.  We disagree.

"We have long held that we are not bound by 'language which was unnecessary' in an earlier decision 'and which passed upon an issue not really presented.'"  Commonwealth v. Rahim, 441 Mass. 273, 284 (2004), quoting Old Colony Trust Co. v. Commissioner of Corps. & Taxation, 346 Mass. 667, 676 (1964).  See Black's Law Dictionary 570 (12th ed. 2024) ("obiter dictum" is "[a] judicial comment . . . that is unnecessary to the decision in the case and therefore not precedential").  A statement is "necessary" in this sense not only when it expresses the court's conclusion; the court's articulation of its rationale for its conclusion is likewise necessary and therefore binding in future cases.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67 (1996) ("When an opinion issues for [a high court], it is not only the result but also those portions of the opinion necessary to that result by which [subsequent courts] are bound"); Black's Law Dictionary 874 (defining "holding" as "[a] court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision").  Because "[n]o two cases ever have exactly the same facts[, it] is only by reference to [a prior] court's reasoning that one can determine whether the factual differences between the earlier case and the later one should change the result or

be disregarded as immaterial."  Leval, Judging Under the
Constitution:  Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1256
n.20 (2006).

The decision in Resende was propelled by the court's
conclusion that the "most logical interpretation" of § 10G is
that it reflects a "recidivist philosophy."  Resende, 474 Mass.
at 468-469 & n.23.  That conclusion, which the court arrived at
after a comprehensive survey of related statutes and case law,
see id. at 464-469, was essential to the court's adoption of the
sequential prosecution rule.  Id. at 469.  Indeed, the court
made explicit the analytic connection between the graduated
penalty structure of the ACCA and the recidivist philosophy:

> "'[T]he point of sentence enhancement is to punish more
> severely offenders who have persevered in criminal activity
> despite the theoretically beneficial effects of penal
> discipline.' . . .  Particularly salient here is the
> implicit link between enhanced punishment and behavioral
> reform, and the notion that the former should
> correspondingly increase along with a defendant's foregone
> opportunities for the latter.  Any other conception would
> ignore the rationale underlying the recidivist philosophy
> . . . ."

Id. at 467, quoting Commonwealth v. Shiffler, 583 Pa. 478, 494
(2005).

The sequential prosecution rule was not only essential to
the court's analysis, it was "investigated with care," was
arrived at with "the benefit of the vigorous advocacy on which
the adversary process relies," and was reached over the views of

two dissenting justices.[6]  Rahim, 441 Mass. at 284, quoting

Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399-400 (1821).[7]

Contrast Old Colony Trust Co., 346 Mass. at 676 (statements in

two prior decisions made without analysis and unnecessary to

outcome were obiter dictum); Brown v. Commissioner of

Correction, 336 Mass. 718, 720 (1958) (prior decision's two-

sentence aside on hypothetical variant of facts was obiter

dictum).  The sequential prosecution rule was not a digression,

a brief comment, or a statement unbuttressed by analysis or

explanation.

Although Resende contained a suggestion that the meaning of

"arising from separate incidences" may be ambiguous to some

extent and thus trigger the rule of lenity, see Resende, 474

---

[6] The dissenters took the view, which the Commonwealth argues here, that it is illogical to treat a person who commits multiple unrelated qualifying crimes as having only a single prior qualifying conviction for purposes of the ACCA.  Resende, 474 Mass. at 471-472 & n.2 (Cordy, J., dissenting).  But that view, which would interpret the ACCA similarly to its Federal counterpart, was rejected by the Resende majority when it concluded that the Legislature intended to distinguish the ACCA from its Federal counterpart.  See id. at 469 n.24.

[7] In Rahim, we assessed the statement in Commonwealth v. Smith, 431 Mass. 417, 421-422 (2000), that a Massachusetts statute prohibiting incest applied to "affinal kin."  Rahim, 441 Mass. at 284-286.  Observing that this statement had been made "without analysis or explanation," was unaccompanied by a discussion of prior case law, addressed an issue not briefed or argued by any party, and had no bearing on Smith's result, the Rahim court disregarded it as obiter dictum.  Id.

Mass. at 469, that alternative and hypothetical line of analysis does not negate the precedential force of the remainder of the court's reasoning. See Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949) ("where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum").

We acknowledge, as the Commonwealth points out, that the same outcome could have been reached for Resende -- whose convictions arose from a single prosecution and plea -- under a rule requiring that prior convictions need only be separate, without requiring that they also be sequential. But the fact that the court's statutory analysis led to a conclusion broad enough to cover facts beyond those immediately presented by Resende's case is no reason to disregard the court's conclusion or the logic underlying it. See generally Aldisert, Precedent: What It Is and What It Isn't; When Do We Kiss It and When Do We Kill It?, 17 Pepp. L. Rev. 605, 609 (1990) (when "[a] court's statement of its conclusion is broad enough to cover not only record facts but also additional facts not in the record . . . the court's decision is not obiter dictum"). Cf. Leval, 81 N.Y.U. L. Rev. at 1256 n.20 (limiting opinion's precedential effect to its resolution of exact facts of case would "denude[] judicial decisions of all useful content"). And, in fact, the court's conclusion that Resende could not be sentenced under § 10G (c) was an application of the court's analysis, not an

independently justified rule of law.  Put otherwise, to ignore Resende's reasoning would leave its resolution of the facts without analytic foundation.  In short, the sequential prosecution rule was the result of the court's considered reasoning, was essential to Resende's holding, and is binding here.

What remains is to apply the sequential prosecution rule to the facts presented here.  The Commonwealth acknowledges that the defendant's earlier convictions stemming from the three prior prosecutions were not sequential in that he had committed all the crimes before being convicted and sentenced for any one of them.  Accordingly, the judge correctly dismissed so much of the defendant's indictment under § 10G (c) as alleges more than one predicate offense, and that ruling is affirmed.

So ordered.