THE BROADWAY NATIONAL BANK OF CHELSEA vs. COM-
MISSIONER OF CORPORATIONS AND TAXATION.

Suffolk. January 7, 1947. — February 11, 1947.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

Taxation, National bank. Statute, Construction. Words, "Dividends."

In determining the net income of a national bank for 1942 for the pur-
pose of levying a tax upon it under G. L. (Ter. Ed.) c. 63, § 2, as
amended by St. 1941, c. 509, § 3, dividends paid in that year by it
to the Reconstruction Finance Corporation upon preferred stock pre-
viously issued to that corporation for a loan were not "dividends"
within the definition of "Net income" in § 1, as amended by St.
1933, c. 327, § 1, and, being "deductions . . . allowable by the fed-
eral revenue act applicable for said taxable year," were deductible
from the gross income of the bank.

A construction of the meaning of the word "dividends" in G. L. (Ter.
Ed.) c. 63, § 1, as amended by St. 1933, c. 327, § 1, uniformly adopted
by the commissioner of corporations and taxation until for the first
time he urged the opposite construction in 1944, was of significance
in determining such meaning.

APPEAL from a decision by the Appellate Tax Board.

R. L. Cummings, for the taxpayer, submitted a brief.

R. J. Cotter, Jr., Assistant Attorney General, for the
Commissioner of Corporations and Taxation.

WILKINS, J. This is an appeal by the taxpayer, a national
banking association, from a decision of the Appellate Tax
Board in favor of the commissioner of corporations and tax-
ation, who had refused to abate a tax which, pursuant to
G. L. (Ter. Ed.) c. 63, § 2, as amended by St. 1941, c. 509,
§ 3, he had assessed upon the bank in 1943, and which was
measured by its net income in 1942.

The facts appear in the decision of the board. In several
years prior to 1942 the bank, at the request of the comptrol-
ler of the currency of the United States, charged off certain
overdue loans and decreased its profit and loss account ac-
cordingly. In 1942 the bank recovered, and added to its

profit and loss account, $833.91 on account of such loans, but did not include this amount in its 1943 State tax return, which showed a net income of $9,683.28. The commissioner included this amount and determined the net income to be $10,517.19. On January 11, 1934, the bank received $250,-000 from the Reconstruction Finance Corporation, and issued five thousand shares of preferred stock "in exchange for the loan." These were the only outstanding preferred shares of the bank. No other details of the transaction or the reasons for it appear. The bank paid the following dividends to the Reconstruction Finance Corporation: 1934, $479.45; 1935, $14,791.67; 1940, $21,875; 1941, $32,690.68; 1942, $6,900; 1943, $6,900; 1944, $6,900. The amounts of the dividends were deducted from the gross income of the bank in each year in computing the net income in the tax returns filed with the commissioner, who for the first time questioned the validity of the deductions in his answer filed with the Appellate Tax Board. When the commissioner had assessed the tax for 1943 he did so on a net income of $10,517.19. The tax at the rate of six per cent was $631.03, and with interest was $632.92. The bank paid the tax under protest, and filed with the commissioner an application for abatement of so much thereof as related to the recovery of $833.91 charged off on overdue loans. After denial of the application the bank appealed to the Appellate Tax Board. In accordance with its decision on the same question in a previous case between the same parties relating to an earlier taxable year (A. T. B. Adv. Sh. [1941] 91), the board held that the $833.91 was not income "within the meaning of G. L. (Ter. Ed.) c. 63, §§ 1–7," and that the tax on this amount should have been abated; but that the deduction of the dividends was not authorized by statute, and since the dividends in 1942 were $6,900, and hence were in excess of $833.91, the bank was not entitled to an abatement.

The commissioner has not questioned before us the correctness of the ruling that the sum of $833.91 was not income, and we accept that ruling as right. The question for our determination is whether the dividends were de-

ductible. By G. L. (Ter. Ed.) c. 63, § 2, as amended by St. 1941, c. 509, § 3, it is provided, "Every bank shall pay annually a tax measured by its net income, as defined in section one . . . ." In G. L. (Ter. Ed.) c. 63, § 1, as amended by St. 1933, c. 327, § 1, is the definition: " 'Net income', the gross income from all sources, without exclusion, for the taxable year, less the deductions, other than losses sustained by the bank in other fiscal or calendar years and other than dividends, allowable by the federal revenue act applicable for said taxable year."

There is no doubt but that the dividends in question would have been deductions allowable by the applicable Federal revenue act. "In computing the net income of any national banking association, . . . there shall be allowed as a deduction from gross income . . . any dividend . . . paid, within the taxable year, to the United States or to any instrumentality thereof exempt from Federal income taxes, on the preferred stock of the corporation owned by the United States or such instrumentality." Internal Revenue Code, § 121, Act of February 10, 1939, 53 U. S. Sts. at Large, 1, 56. The Reconstruction Finance Corporation is an instrumentality of the United States. *Reconstruction Finance Corp.* v. *J. G. Menihan Corp.* 312 U. S. 81. It is exempt from Federal income taxes. Act of January 22, 1932, c. 8, § 10, 47 U. S. Sts. at Large, 5, 9. See also Act of March 20, 1936, c. 160, 49 U. S. Sts. at Large, 1185. The allowance as a deduction of dividends paid on preferred stocks of banks fitted into the general statutory pattern which had been drawn to meet the economic crisis in 1933. National banking associations had been authorized to issue preferred stock, and the Reconstruction Finance Corporation had been authorized to subscribe thereto, as well as to the preferred stock of State banks, and to make loans secured by such stock as collateral. Act of March 9, 1933, c. 1, §§ 301, 304, 48 U. S. Sts. at Large, 1, 5, 6. See now U. S. C. (1940 ed.) Title 12, § 51a. Banks were thus permitted to receive new capital without detriment to the depositors. The applicable Federal revenue act also permits the deduction of "All interest . . . on indebted-

ness . . . ." Revenue act of 1934, § 23 (b), Act of May 10, 1934, c. 277, § 23 (b), 48 U. S. Sts. at Large, 680, 688.

The Appellate Tax Board in its decision recognized that "There may be circumstances where payment in the form of dividends on preferred stock constitutes payment of interest on an obligation and as such is deductible from gross income to determine net taxable income," citing *United States Fidelity & Guaranty Co.* v. *Commissioner of Internal Revenue*, 40 B. T. A. 1010, but concluded upon the evidence that the bank had not sustained the burden of proving that the payments of the dividends in question came within this principle. The board also held that the dividends were included in the words "other than dividends" in the Massachusetts statute so as not to be a permissible deduction in computing the net income of a national banking association.

We are of opinion that the decision of the board overlooks the intended purpose of G. L. (Ter. Ed.) c. 63, § 1, as amended by St. 1933, c. 327, § 1, as shown by its historical background. Considerable havoc in our tax laws was wrought by the decision in *Macallen Co.* v. *Massachusetts*, 279 U. S. 620, which reversed *Macallen Co.* v. *Commonwealth*, 264 Mass. 396. *Central Trust Co.* v. *Howard*, 275 Mass. 153, 155–156. Thereafter was passed an amendment to G. L. c. 63, § 1, which substituted as a new definition of "net income": "The net income for the taxable year as required to be returned by the bank to the federal government under the federal revenue act applicable for the period, adding thereto any net losses, as defined in said federal revenue act, that have been deducted and all interest and *dividends*[1] not so required to be returned as net income which would be taxable if *received*[1] by an individual inhabitant of the commonwealth; provided that net income as defined in this section shall not include interest from bonds, notes or certificates of indebtedness of the United States or of any federal instrumentality, if such interest is by the constitution of the United States or by act of con-

---

[1] Italics supplied.

gress exempt from taxation under this chapter." St. 1930, c. 220, § 1. This definition was superseded by an amendment contained in St. 1933, c. 327, § 1, hereinbefore quoted, in which "dividends" are referred to by that one word alone without mention that they be "received" as in the preceding statute. The passage of c. 327 followed the annual report of the commissioner, part of which, printed as House Document No. 69 (1933), contained recommendations to accompany House Bill No. 76, entitled "An Act relative to taxation of banks, trust companies and certain other corporations, especially with respect to definition of net income." The recommendations stated that the proposed change would substitute the definition of "net income" employed in the State of New York; "would tend toward greater uniformity in the taxation of corporations and banks";[1] would bring about that "the income base lost through the *Macallen* decision (279 U. S. 620) would, in some measure, at least, be recovered both in the case of banks and business corporations," and "would also permit audit of net income without awaiting Federal action and independent of Federal action." House Bill No. 76, so far as material, defined "net income" as "Total net income . . . without deduction of . . . dividends received on stocks." As already noted, the act as passed (St. 1933, c. 327, § 1) omitted the words "received on stocks."

It is apparent, however, that it was not a purpose of the new statute to affect the meaning of "dividends" contained in the previous statute. Nowhere is there any suggestion that there should be an extension of "dividends" to include those paid in addition to those "received." Nor does it appear that there was any occasion to do so. The Legislature was providing for the nondeductibility of dividends then deductible under the Federal revenue act, when in St. 1933, c. 327, § 1, it referred to "the gross income from all sources . . . less the deductions . . . other than divi-

---

[1] The amended New York Consolidated Laws, c. 60, § 219–xx, par. 2, allows as a deduction "All interest paid or accrued during the year on indebtedness and all dividends paid during the year on preferred stock held by the Reconstruction Finance Corporation."

dends, allowable by the federal revenue act applicable for said taxable year." In 1933 the applicable Federal revenue act provided: "In computing net income there shall be allowed as deductions: . . . (p) Dividends received by corporations. — In the case of a corporation, the amount received as dividends — (1) from a domestic corporation . . .." Act of June 6, 1932, c. 209, § 23, 47 U. S. Sts. at Large, 169, 179, 182. The same language was to be found in the Federal revenue act applicable in 1930. Revenue act of 1928, Act of May 29, 1928, c. 852, § 23, 45 U. S. Sts. at Large, 791, 799, 801. There was in those years no Federal statutory provision for deduction of dividends paid. Such a provision first appeared in Act of August 27, 1935, c. 767, § 3, 49 U. S. Sts. at Large, 908. This is now to be found in Internal Revenue Code, § 121, Act of February 10, 1939, 53 U. S. Sts. at Large, 1, 56, hereinbefore quoted. It is not, and cannot rightly be, contended that the bald use of the word "dividends" in St. 1933, c. 327, § 1, was in anticipation of such Federal legislation.

In *DeBlois* v. *Commissioner of Corporations & Taxation*, 276 Mass. 437, 440, it was said, "The present contention of the respondent, put forward first in 1930, is contrary to the departmental construction of the income tax law since its enactment in 1916. . . . That continued construction is of some significance in determining the scope of the statute. It is hardly to be thought that, if the contention had strong support in reason and law, it would not have been thought of earlier." This quotation is pertinent here. The construction of the act now urged by the commissioner was first raised in 1944 in his answer in the present litigation filed with the Appellate Tax Board, and is contrary to his uniform construction of the statute since the question first became material by the passage of the Act of August 27, 1935. We view that contention as wholly without merit.

We do not find it necessary to determine whether the dividends were also deductible as interest on indebtedness. See revenue act of 1934, § 23, Act of May 10, 1934, c. 277, § 23, 48 U. S. Sts. at Large, 680, 688. Nor do we reach the question whether the refusal to allow the deduction

was in violation of Act of March 20, 1936, c. 160, § 1, 49 U. S. Sts. at Large, 1185. [1]

The abatement is granted in the sum of $50.18 with costs of this appeal.  See G. L. (Ter. Ed.) c. 58A, § 13, as amended; c. 63, §§ 4, 60, as amended.

*So ordered.*

---

[1] This provides: "Notwithstanding any other provision of law or any privilege or consent to tax expressly or impliedly granted thereby, the shares of preferred stock of national banking associations, and the shares of preferred stock, capital notes, and debentures of State banks and trust companies, heretofore or hereafter acquired by Reconstruction Finance Corporation, and the dividends or interest derived therefrom by the Reconstruction Finance Corporation, shall not, so long as Reconstruction Finance Corporation shall continue to own the same, be subject to any taxation by the United States, by any Territory, dependency, or possession thereof, or the District of Columbia, or by any State, county, municipality, or local taxing authority, whether now, heretofore, or hereafter imposed, levied, or assessed, and whether for a past, present, or future taxing period."