WILLIAM J. CLEARY & others *vs.* CARDULLO'S, INC.
& others.[1]

Middlesex.    March 4, 1964. — April 16, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Alcoholic Liquors,* License, Transfer of location, Nuisance.  *Statute,* Construction.  *Moot Question.  Nuisance.  Equity Pleading and Practice.*  Suit to enjoin nuisance.  *Words,* "Combination of persons."

The provision of § 67 of G. L. c. 138, as amended, that "In case . . . [the] local authorities are unwilling to issue a [liquor] license to any of the applicants before it, . . . no application by the same applicant to be exercised on the same premises shall be received within one year of the date of his last prior application," relates to the issuance of original licenses and not to transfers.  [342]

Following receipt by the local licensing authorities in September of an application for a transfer of a liquor license and location and their failure to approve the transfer, the authorities were not precluded from receiving in the following March and later approving a new application for a transfer by the provision of G. L. c. 138, § 16B, that the "licensing authorities shall not receive more than one application for a license . . . to be exercised on the same premises during the same license year": a license year is a calendar year, so that the applications were for separate license years.  [342]

Upon appeal from the final decree in a suit in equity wherein the trial judge found that the sale of alcoholic beverages at certain premises would violate the first paragraph of G. L. c. 138, § 16C, and entered a decree enjoining the sale as a "liquor nuisance," and it appeared that whether there was a violation of the statute depended on which of several possible methods of measurement of the distance of the premises from churches on other streets was required by the ambiguous provisions of the statute, that the judge excluded evidence that "uniformly and . . . consistently" since the enactment of the statute the Alcoholic Beverages Control Commission had interpreted it as requiring a certain method of measurement, and that the judge employed another method which resulted in his finding, the case was remanded to the Superior

---

[1] This case is a continuation of the controversy considered in *Cleary* v. *Licensing Commn. of Cambridge,* 345 Mass. 257.

Cleary *v.* Cardullo's, Inc.

Court for further consideration of the commission's interpretation and practice respecting the proper method.   [342–345]

In G. L. c. 138, § 16C, effective in 1956, the provision that the prohibition against licensing for the sale of alcoholic beverages of premises located within five hundred feet of a church or school "shall not apply to the transfer of a license from premises located within the said distance to other premises located therein, if it is transferred to a location not less remote from the nearest church or school than its former location," means only that a pre-1956 licensee having a location in the five hundred feet area around a particular church or school may transfer to a new location in the same area not nearer to that church or school than his former location, and does not mean that he may transfer to a location within five hundred feet of another church or school.   [345–346]

G. L. c. 138, §§ 12, 15, and 17, read together, indicate a purpose that no "combination of persons," treated as a unit, shall "directly or indirectly" be licensed for the sale of alcoholic beverages under more than one of such sections; and such sections forbade the transfer of a package store license and location under § 15 to a corporation operating a delicatessen store which before the transfer had no license under any section of c. 138 if that corporation and two corporations each holding a license under § 12 for the sale of alcoholic beverages to be drunk on the premises and a certain person, who owned and directed the corporations licensed under § 12 and lent guidance and financial support to the delicatessen store corporation, although he was not the owner or in control thereof, constituted a "combination of persons."   [347–348]

The provisions of G. L. c. 138, § 23, that no license for the sale of alcoholic beverages shall be transferred under § 15 unless there is filed with the application a sworn statement "giving the names and addresses of all persons who have a direct or indirect beneficial interest in said license" and that "Failure to comply with . . . [such requirement] shall be cause for the suspension or revocation of such [a] license," authorize but do not require suspension or revocation for noncompliance, and did not preclude a transfer of a license under § 15 to a corporation where the applicant's sworn statement through "an honest mistake without intent to deceive" contained an erroneous recital as to stock ownership in the proposed transferee.   [350]

The subject matter of a bill in equity under G. L. c. 139, §§ 16 and 16A, to enjoin as a common nuisance and a liquor nuisance the use of certain premises by a corporation for the sale of alcoholic beverages under c. 138, § 15, following a transfer to it of a liquor license and location did not become moot after the expiration of the license year where the bill presented the question whether at any time a license under § 15 could be validly granted to the corporation for such premises.   [350–351]

In a suit in equity under G. L. c. 139, §§ 16 and 16A, to enjoin allegedly illegal sale of alcoholic beverages at certain premises as a nuisance, the courts are not bound by the determinations of the local licensing authority concerning the facts relevant to a lawful issuance of a license for such premises.   [351]

BILL IN EQUITY filed in the Superior Court on December 24, 1962.

The plaintiffs and the defendants appealed from a final decree entered by *O'Malley, J.*

*Julius H. Soble* for the defendant Cardullo's, Inc.

*Arthur M. Gilman (Walter H. McLaughlin* with him) for the plaintiffs.

*Earle S. Tyler, Jr.,* for the defendants Elizabeth W. Stearns, trustee, & another, submitted a brief.

*Edward W. Brooke,* Attorney General, *& Samuel Adams,* Assistant Attorney General, for Alcoholic Beverages Control Commission, amicus curiae, submitted a brief.

*Daniel F. Leary,* for Boston Retail Liquor Dealers' Association, amicus curiae, submitted a brief.

CUTTER, J. The plaintiffs who are taxpayers in Cambridge (see G. L. c. 139, §§ 16 and 16A, as amended by St. 1934, c. 328, §§ 11 and 12) seek to enjoin Cardullo's, Inc. (Cardullo's), and the owners of the premises at 6 to 7 Brattle Street, near Harvard Square in Cambridge, from selling alcoholic beverages upon these premises. A preliminary injunction against such sale was granted, from which Cardullo's appealed.

After trial on the merits, the judge made the following findings. Cardullo's leases the Brattle Street premises and there maintains a delicatessen store. Silveira's Liquor Store, Inc. (Silveira's), operated a licensed retail liquor package store at 291–293 Cambridge Street, Cambridge, which is approximately two miles from 6 to 7 Brattle Street. On September 18, 1961, Silveira's asked the licensing commission of Cambridge for leave to transfer its license to Cardullo's at the Brattle Street premises. Up to September 13, 1961, Frank N. Cardullo was the owner of all the shares of Cardullo's. On that day he transferred to his son, Frank R. Cardullo (the son) "all of his stock interest . . . without monetary consideration."

The transfer applications failed of approval by a tie vote (1 to 1). The Alcoholic Beverages Control Commission (ABC) approved both applications and remanded the mat-

ters to the Cambridge commission recommending approval. The Cambridge commission took no action.

New transfer applications were made by Silveira's on March 28, 1962. These were approved by the Cambridge commission on April 25, 1962. The plaintiffs contend that the approval was invalid (a) because Silveira's had filed similar applications within one year, see G. L. c. 138, §§ 23 and 67 (as amended through St. 1955, c. 652, and St. 1955, c. 461, respectively; see later amendment of § 67 by St. 1962, c. 500); (b) because the Brattle Street premises are within 500 feet of two churches, see G. L. c. 138, § 16C (inserted by St. 1954, c. 569, § 1);[2] (c) because the approval of the application involved granting licenses to one corporation under more than one section of G. L. c. 138 in violation of c. 138, § 17 (as amended through St. 1960, c. 691);[3] and (d) because there was a misstatement of fact in the transfer applications. See c. 138, § 23.

Upon each of these issues the trial judge made findings and rulings. He concluded that the "sale . . . of any alcoholic . . . beverages at . . . 6–7 Brattle Street . . . constitutes a liquor nuisance within" G. L. c. 139, § 16A, "for the reason, and none other, that . . . [the] premises are located within 500 feet of the nearest church or churches within the meaning of" § 16C. The owners and Cardullo's appealed, as did the plaintiffs, from a final decree enjoining use of the premises for such sale. The evidence is reported.

1. The Cambridge commission could act upon the applications of March 28, 1962, despite the prior applications

[2] The first unnumbered paragraph of § 16C reads, "Premises, except those of an innholder, located within five hundred feet, *measured along public ways*, of a church or school shall not be licensed for the sale of alcoholic beverages; but this provision shall not apply to the transfer of a license from premises located within the said distance to other premises located *therein*, if it is transferred to a location not less remote from the nearest church or school than its former location" (emphasis supplied). By St. 1954, c. 569, § 3, § 16C took effect on January 1, 1956, and under c. 569, § 2, it was not to "apply to premises which, prior to the effective date of this act, or prior to the establishment of a church or school within five hundred feet thereof, were licensed for the sale of alcoholic beverages."

[3] The second from the last paragraph of § 17 reads, "Unless expressly authorized by this chapter, local licensing authorities shall not grant licenses to any person, firm or corporation under more than one section of this chapter."

Cleary *v.* Cardullo's, Inc.

SCALE (FEET)

0   50   100   150   200   250   300

BASED ON EXHIBIT 33 (IN TWO PARTS)

SOLID LINE — MEASUREMENTS BY CARDULLO'S METHOD
DOTTED LINE — MEASUREMENTS BY PLAINTIFF'S METHOD

Cleary *v.* Cardullo's, Inc.

filed on September 18, 1961. The trial judge correctly ruled that the last sentence of the fifth paragraph of G. L. c. 138, § 67,[4] has no application to the transfer situation now before us, and that the pertinent statutory provision was the last paragraph of § 16B.[5] In context the prohibition in the last sentence of the fifth paragraph of § 67 seems to relate to the issue of original licenses and not to transfers. Because the license year is the calendar year the 1961 and the 1962 applications were for separate license years and thus the 1962 application was not forbidden by § 16B.

2. The Brattle Street premises are not within 500 feet of any church or school on the same street. Whether they are within 500 feet of two churches on other streets[6] depends upon what method of measurement is employed. The trial judge ruled that the first paragraph of c. 138, § 16C (see fn. 2, *supra*), requires measurement "along public ways by the most direct route, diagonal or otherwise, from the nearest frontal points of the buildings to each other, and not by a route along the center or middle lines of the ways and intersections." So measured the Brattle Street premises are 457 feet and 452.5 feet, respectively, from the Holy Cross Church on Mount Auburn Street and the Unitarian Church at the corner of Massachusetts Avenue and Church Street. See the accompanying plan. Cardullo's and counsel for Boston Retail Liquor Dealers' Association and the ABC, as amici curiae, contend that the distance is to be measured between a point on the center line of the public way nearest to the nearest frontal corner of the church and a similar point on the center line of the public way nearest to the

4 This sentence of § 67 reads, "In case said local authorities are unwilling to issue a license to any of the applicants before it, then such issuance shall be withheld pending further applications, and no application by the same applicant to be exercised on the same premises shall be received within one year of the date of his last prior application."

5 The last paragraph of § 16B reads, "The licensing authorities shall not receive more than one application for a license under section twelve or fifteen to be exercised on the same premises during the same license year, except in any case where they otherwise determine."

6 There is no indication of any opposition to the license from either church. Indeed, it was stated to the trial judge, who took a view, that there were licensed premises immediately adjacent to one of the churches.

nearest frontal corner of the premises to be licensed. By
this method the Brattle Street premises are 585 feet from
the Holy Cross Church and 504 feet from the Unitarian
Church.[7] Doubtless other methods of measurement could
be devised which might reasonably be regarded as comply-
ing with the ambiguous statutory language.

One Hearn, who had been secretary of the ABC since
1933, was permitted to testify that the ABC had interpreted
the first sentence of § 16C relating to the 500 foot meas-
urement method. The trial judge excluded further testi-
mony by Hearn. Cardullo's counsel then offered to prove
through Hearn that, "uniformly and . . . consistently"
since the enactment of § 16C, it had been interpreted by the
ABC in the manner for which Cardullo's had contended.

Significance in interpretation may be given to a consist-
ent, long continued administrative application of an am-
biguous statute, (cf. *State Tax Commn.* v. *Gray,* 340 Mass.
535, 541), especially if the interpretation is contemporane-
ous with the enactment. See *Tyler* v. *Treasurer & Recr.
Gen.* 226 Mass. 306, 310; *Powers's Case,* 275 Mass. 515, 518;
*DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437,
440; *Broadway Natl. Bank* v. *Commissioner of Corps. &
Taxn.* 321 Mass. 25, 30; *Commissioner of Corps & Taxn.* v.
*Springfield,* 321 Mass. 31, 38; *Louisville & Nashville R.R.* v.
*United States,* 282 U. S. 740, 757.[8] The best proof, of
course, of a consistent administrative interpretation is the

---

[7] This method involves (where the church and the premises of the applicant
are not on the same street) following the center line of the street on which the
church stands to its intersection with the center line of the intersecting street
and then turning and following that center line to the other terminus of the
measured distance, repeating the turning process if there is another intersection
before reaching the other terminus. In this connection, the ABC invites our
attention to the rule that a deed describing premises as "bounded on a way"
passes title to the center of the way. See *Boston* v. *Richardson,* 13 Allen, 146;
*Loosian* v. *Goudreault,* 335 Mass. 253, 255; Swaim, Crocker's Notes on Common
Forms (7th ed.) §§ 171–178. This rule may give some basis for the interpre-
tation of § 16C for which Cardullo's and the ABC contend.

[8] See also *Burrage* v. *County of Bristol,* 210 Mass. 299, 301–302; *Lynch* v.
*Commissioner of Educ.* 317 Mass. 73, 78–83 (legislative acquiescence in admin-
istrative interpretation). Cf. *Allen* v. *Commissioner of Corps. & Taxn.* 272
Mass. 502, 509; *State Tax Commn.* v. *John Hancock Mut. Life Ins. Co.* 341
Mass. 555, 565; *Harvey Payne, Inc.* v. *Slate Co.* 345 Mass. 488, 491–492. Cf.
also *O'Brien* v. *State Tax Commn.* 339 Mass. 56, 70.

administrative body's regulations, or its published written decisions or interpretations. See e.g. *First Natl. Bank* v. *Commissioner of Corps. & Taxn.* 274 Mass. 583, 587 (regulation). See also G. L. c. 30A, inserted by St. 1954, c. 681, § 1, and G. L. c. 138, §§ 24 (as amended through St. 1952, c. 426) and 71 (as amended through St. 1953, c. 654, § 97). The provisions of c. 138, § 24, and of c. 30A, §§ 1 (5), 2, 3, 4, 5, 6, and 7, demonstrate the importance attached by the Legislature to fair methods of promulgating, reviewing, and publicizing administrative regulations.

The duty of statutory interpretation is for the courts. Nevertheless, particularly under an ambiguous statute like § 16C, the details of legislative policy, not spelt out in the statute, may appropriately be determined, at least in the first instance, by an agency charged with administration of the statute. The method of measuring the 500 foot distance under § 16C is a matter as to which rules, uniform throughout the Commonwealth, should take account of all situations likely to be encountered (e.g. church on same side of street as licensed premises, on the opposite side, around one corner [which, of course, may be a right angle, an obtuse angle, an acute angle, or a curve], or around two such corners). The ABC will have constantly before it a variety of situations in which the statutory principle must be applied. It may well be in a better position than a court to determine what measurement method, consistent with the statutory language, will best carry out the legislative purpose.

The case must be remanded to the Superior Court so that there may be further consideration of the ABC practice. If the ABC within thirty days after rescript shall take the initial steps toward adopting a regulation stating its interpretation of so much of § 16C as concerns the 500 foot measurement, and proceeds promptly thereafter to promulgate such a regulation, then the trial judge is to apply that regulation, if not in conflict with the statute. Otherwise, the trial judge is to give consideration to any such oral and documentary evidence, not contrary to the plain language of § 16C, as he may be satisfied establishes a substantial, uni-

form, and long continued administrative interpretation of § 16C by (a) consistent application of that interpretation in cases before the ABC, or (b) ABC's published or generally circulated rulings. See c. 30A, §§ 1 (5), 8; *Scott* v. *Commissioner of Civil Serv.* 272 Mass. 237, 241 (practice alleged in answer and found by single justice to exist, see original record, p. 6). Cf. *Passanessi* v. *C. J. Maney Co. Inc.* 340 Mass. 599, 604 (oral proof of written regulation or of oral rule inadmissible). The ambiguity inherent in § 16C, however, appropriately should be clarified by regulation rather than by less formal means.

3. Cardullo's contends that, even if the Brattle Street premises are within 500 feet of a church, § 16C permits the transfer of the Silveira license to any other premises in Cambridge, provided that the new premises are thereafter no closer to the nearest church or school than were the formerly licensed premises. Such an interpretation of § 16C would make it, in effect, a zoning statute (1) prohibiting, as of its effective date in 1956, any new licenses within the forbidden 500 foot distance, but (2) permitting any pre-1956 licensee either to remain at his former location in a forbidden area or to move, under a sort of roving, nonconforming use, not only within the particular forbidden area but also anywhere else in the city, so long as he moved no closer to any church or school than he had been to a church or school in his original licensed premises.

The trial judge properly excluded evidence that the ABC in practice had adopted such an interpretation for the specific language of § 16C does not permit that interpretation.[9] The word "therein," in the sentence from § 16C already quoted (fn. 2), indicates to us that the right of a pre-1956 licensee to move within 500 feet of a church or school is limited to the particular church or school area in which lay his licensed premises prior to the move. Section 16C cannot be

[9] The legislative history does not lead us to a different conclusion. See 1954 Senate Bill No. 673; 1954 Senate Journal, p. 690; 1954 Senate Bill No. 707, as amended on April 8, 1954 (1954 Senate Journal, pp. 715–716). Even reading the amendment of April 8, 1954, in the light of Senate Rule 31, we give great weight to the word "therein."

interpreted as giving such pre-1956 licensees (whose premises were originally within 500 feet of a church or school) any broader immunity, not enjoyed by others, from the prohibition in § 16C. See *Opinion of the Justices,* 341 Mass. 760, 785 (where a narrow statutory interpretation was adopted to avoid constitutional doubts).

4. The great bulk of the testimony concerned whether, despite the transfer of Cardullo's stock to the son, Cardullo's continued to be controlled after September 13, 1961, by Frank N. Cardullo (the father), holder of the stock in two corporations (Fran-Rich, Inc., and Wursthaus, Inc.) licensed under G. L. c. 138, § 12 (as amended through St. 1959, c. 480; see later amendment by St. 1963, c. 176), to sell alcoholic beverages to be drunk on the premises. The trial judge recognized that "there is reasonable ground for strong suspicion that the transfer of the stock interest from the father . . . to the son . . . was . . . for the purpose of avoiding the law and that the real ownership and control of Cardullo's . . . is in the father . . . and not in the son." He found, however, "that the . . . circumstances . . . are consistent with the action of a provident father, who, seeing a good opportunity to establish his 22-year old son in . . . business . . . seizes . . . the opportunity out of . . . paternal affection . . . . And this, notwithstanding the arranging for financial backing and support by the father, together with . . . [other] assistance, in helping to arrange an efficient operation . . . short of control, especially in view of the . . . inexperience of a 22-year old son." The judge concluded that the plaintiffs "have not sustained the burden" of proving that the transfer from father to son "was a sham or for the purpose of avoiding the law," and that only the son, "and no firm, corporation, association or other combination of persons, directly or indirectly, or through any agent, employee, stockholder, officer or other person, or any subsidiary . . . has any interest, financial, beneficial, or otherwise in Cardullo's."

General Laws c. 138, § 15 (as amended through St. 1938, c. 353), governs package store licenses. It provides in part,

"No person, firm, corporation, association, or other combination of persons, directly or indirectly, or through any agent, employee, stockholder, officer or other person or any subsidiary whatsoever, shall be granted, in the aggregate, more than three such licenses in the commonwealth, or be granted more than one such license in a town or two in a city."[10]  The plaintiffs contend that § 12, § 15, and the language already quoted (fn. 3, *supra*) from § 17, in the aggregate prevent granting a license under § 15 to Cardullo's. The judge ruled that the transfer of this package store license, issued under § 15, was not prohibited by the language quoted above from that section.  That language makes no reference to the provisions of §§ 12 and 17.  Cardullo's, he found, had only one package store license (§ 15), "the former Silveira's . . . license."  He also found that Cardullo's did "not hold any other form of license in violation of" § 17 (see fn. 3), a section which would prevent the issue of a license under § 12, and also one under § 15, to any "person, firm or corporation."  See § 17.

The validity of licenses under § 12 granted to corporations (Fran-Rich, Inc. and Wursthaus, Inc.) other than Cardullo's is not here directly in issue.  We think, however, that the trial judge interpreted § 15 too narrowly and without giving sufficient weight to the content of closely related sections.  Sections 12, 15, and 17, read together, forbade the Cambridge commission to grant a license to Cardullo's, not only if it was in effect an agent of, or otherwise controlled by, Frank N. Cardullo (the father), but also if Frank N. Cardullo, Cardullo's, and the other corporations (licensed under § 12) constituted in effect a "combination of persons" within the meaning of c. 138, § 12 (see fn. 10). If Cardullo's in fact was an instrumentality of Frank N. Cardullo, or, if because of his interest in Fran-Rich, Inc.

---

[10] The language quoted in the body of the opinion from § 15 is to be compared with that found in the eighth paragraph of § 12, as amended (licenses for beverages to be drunk on the premises), which provides, "No person, firm, corporation, association or other combination of persons, directly or indirectly, or through any agent, employee, stockholder, officer or other person, or any subsidiary whatsoever, licensed *under the provisions of section fifteen, eighteen or nineteen* shall be granted a license under *this section*" (emphasis supplied).

and Wursthaus, Inc. and his activities in behalf of Cardullo's, the three corporations constituted a "combination of persons," the inevitable effect of granting a license to Cardullo's under § 15 would be to cause a violation of § 12 by the other corporations. This result seems to us to run counter to a legislative purpose, apparent from §§ 12, 15, and 17 (see fn. 3), that no combination of persons, properly treated as a unit by any of these sections, should be licensed under more than one such section. The relevant parts of these sections have been in essentially this form since 1933. See St. 1933, c. 376, § 2; 1933 Senate Doc. No. 494, pp. 35–43. The legislative purpose would have been expressed more clearly if there had been included in § 15 a reference to § 12 comparable to the reference to § 15 found in § 12 and if § 17 had been more broadly expressed. Nevertheless, we take the view that the general legislative purpose to prevent licenses under more than one section affects the granting of a package store license under § 15, as well as a license under § 12, and that, in context, § 17 is to be read as if it in express terms applied to "combination[s] of persons" and as if it forbade violation of its provisions "directly or indirectly."

The trial judge obviously relied largely upon the fact that the father gave to the son all the 100 shares of outstanding stock of Cardullo's. The son thus had the whole equity, but it was a somewhat thin equity.[11] The purchase of Silveira's license was financed by a $90,000 bank loan to Cardullo's on a note dated January 23, 1963, guaranteed by the father and otherwise secured by him. A bank officer testified that, without the guaranty, the loan probably would not have been given.

The evidence showed many aspects of common operation of Cardullo's, Fran-Rich, Inc., and Wursthaus, Inc. For a

---

[11] As of September 30, 1961, Cardullo's total book assets were $45,900.93 and it had a net worth of about $14,000 (no par capital stock carried at $1,000 and retained earnings of $12,902.72, of which $8,773.41 represented net profit after Federal income taxes for the year ended September 30, 1961). It had notes payable to a bank of $6,677.25, and was under agreement to purchase Silveira's package store license for "$60,000 plus cost of inventory," contingent upon the approval of its transfer.

time, single group insurance policies covered the employees of all these corporations. The companies, for a period at least, after September 13, 1961, shared a common bookkeeping office and nearly all the office employees worked for all of the corporations. They had substantial intercompany dealings. It could have been found that Frank N. Cardullo had determined a common bonus formula or policy for all companies. A fourth company, Cardullo's Catering, Inc., provided services to all four corporations, and used equipment owned by Cardullo's at first on an informal arrangement and later under a written rent arrangement. Until January 18, 1963, James Syrios, employed by Wursthaus, Inc., was a director of Fran-Rich, Inc., and also of Cardullo's. The father approved bills of Cardullo's, participated in the son's conferences with the banks, and otherwise was consulted about Cardullo's operations. Mrs. Cardullo signed all checks until December, 1962.[12]

The three licensed enterprises were thus in some degree related through the father's ownership of the equity in two of them and through his guidance and financial support of Cardullo's, which if withdrawn might well have resulted in Cardullo's default on the $90,000 bank loan and in the possibility of his being subrogated to claims of the bank against Cardullo's which he would then have been bound to satisfy as guarantor.

We think that the judge might have taken a different view of this evidence, much of it oral testimony, if he had not interpreted c. 138, § 15, in a more restricted way than we now do. Although the judge found that no "person other than . . . [the son] and no firm, corporation . . . or other combination of persons, directly or indirectly, or through any

_____

[12] On September 13, 1961, when the son received the 100 shares of Cardullo's stock, he had not participated in the negotiations for Silveira's license. He then had no substantial assets and no experience in the liquor business and thereafter showed little knowledge of the details of the business. He received a low salary. He obviously relied considerably upon the advice and guidance of his parents, the lawyer for these four enterprises, and one Levine, who served as manager of Cardullo's, and assisted in training the son. In the aggregate, the evidence indicates strongly that the son, although the owner of the equity in Cardullo's, could not have operated it in late 1961 and thereafter without the vigorous assistance and substantial financial backing of his father.

agent, employee, stockholder . . . or other person . . . has any interest . . . in Cardullo's,'' that does not dispose of the question. He has not decided whether (1) Cardullo's and (2) Fran-Rich, Inc., Wursthaus, Inc., and Frank N. Cardullo, or any one or more of them, constituted a ''combination of persons'' within the meaning of §§ 12 and 15, read with § 17, which could not be licensed both under § 12 and under § 15. Although we might determine that issue ourselves on the present record, we think it more appropriate (where the case on other grounds is to be remanded to the Superior Court) to leave that issue to be decided by the trial judge, in the light of our holding concerning c. 138, §§ 12, 15, and 17.

5. The plaintiffs contend that the transfer of Silveira's license to Cardullo's could not be made because a sworn statement was filed, with the applications, showing erroneously that Mary Cardullo owned 400 shares of Cardullo's. See the last paragraph of G. L. c. 138, § 23 (as amended through St. 1955, c. 652).[13] Section 23 does not compel revocation or suspension of such a license for noncompliance. It merely authorizes such action. The evidence justified the judge's finding that the incorrect report in the sworn statement ''was an error on the part of . . . [an attorney], an honest mistake without intent to deceive.'' It did not preclude granting the transfer.

6. The trial judge correctly ruled that the case has not become moot despite the circumstance that alcoholic beverage licenses are issued annually. See G. L. c. 138, § 23, as amended. This bill under G. L. c. 139, §§ 16 and 16A, as amended, necessarily presents for decision the question whether at any time a package store license could be granted to Cardullo's for these premises upon the basis of the transfer of Silveira's license and in view of Frank N. Cardullo's ownership of stock in other licensed companies and

---

[13] Section 23 provides in part that no license shall be transferred under § 15, ''unless there is filed with the application for such license a sworn statement . . . in [the] case of a corporation by a duly authorized officer thereof giving the names and addresses of all persons who have a direct or indirect beneficial interest in said license. . . . Failure to comply with . . . this paragraph shall be cause for the suspension or revocation of such [a] license.''

of the location of the Brattle Street premises in relation to the churches.   Cf. *Selectmen of Lakeville* v. *Alcoholic Beverages Control Commn.* 329 Mass. 769.

7.   The judge properly determined that he was not bound by the determinations of the Cambridge licensing commission (implicit in the granting of the transfer and licenses) concerning the facts relevant to the commission's authority to issue a license to Cardullo's.   General Laws c. 139, §§ 16 and 16A, authorize bills in equity to enjoin as a nuisance the illegal sale of alcoholic beverages.   Whether a license was lawfully issued may be tested in that manner.   The absence of other remedies (see *Cleary* v. *Licensing Commn. of Cambridge,* 345 Mass. 257) and the somewhat general character of the relief which the ABC may grant under c. 138, § 67, with respect to a license which has been granted (cf. *Miller* v. *Alcoholic Beverages Control Commn.* 340 Mass. 33, 34–35), indicate that the remedy given to public officials and to taxpayers under c. 139, §§ 16 and 16A, is to be construed broadly.

8.   The final decree is reversed.   The case is remanded to the Superior Court for further proceedings consistent with this opinion, which may include reimposition of a temporary injunction pending final disposition of the case.

*So ordered.*