Director of the Div. of Employment Security *v.* Roman Catholic Bishop of Springfield.

DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY *vs.*
ROMAN CATHOLIC BISHOP OF SPRINGFIELD.

Hampden. January 6, 1981. — May 4, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Employment Security*, Exemption, Church-operated schools. *Words,*
"Church."

Church-operated elementary and secondary schools are exempt from the
State employment security law by virtue of G. L. c. 151A, § 6 (*r*), not-
withstanding the repeal of 26 U.S.C. § 3309 (b) (3) (1970) which had
permitted States to exempt from unemployment insurance coverage
services performed "in the employ of a school which is not an institu-
tion of higher education." [503-506]

CIVIL ACTION commenced in the Boston Municipal Court
Department on September 28, 1979.

Upon transfer to the Springfield Division of the District
Court Department, the case was heard by *Lenhoff,* J.

*George J. Mahanna,* Assistant Attorney General, for the
plaintiff.

*John J. Egan* (*Maurice M. Cahillane* with him) for the
defendant.

ABRAMS, J. This appeal challenges the decision of the
board of review (board) of the Division of Employment
Security (division), reversing the determination by the
director of the division (director) that thirty-nine elemen-
tary and secondary schools managed and operated by the
Roman Catholic Bishop of Springfield (a corporation sole),
are employing units subject to the employment security tax-
ation statute, G. L. c. 151A. The board's decision was af-
firmed by a judge of the District Court and, pursuant to
G. L. c. 151A, § 42, the case was reported to this court. We
hold that the persons employed in church-operated elemen-

tary and secondary schools are not covered by the Massachusetts unemployment compensation statute.

We summarize the facts. The Roman Catholic bishop of the diocese of Springfield and his successors are a "body politic and corporation sole . . . subject to all laws of this Commonwealth regulating corporations established for religious and charitable purposes." St. 1898, c. 368, §§ 1, 6. The corporation is "empowered to receive, take and hold, by sale, gift, lease, devise or otherwise, real and personal estate of every description, for religious, charitable and burial purposes, and to manage and dispose of the same for the religious and charitable purposes of the Roman Catholic church." St. 1898, c. 368, § 2. The corporation sole operates 136 churches, fifteen missions, and thirty-nine elementary and secondary schools.

The corporation sole is a nonprofit entity as described in 26 U.S.C. § 501(c)(3) (1976), and is exempt from income taxation pursuant to § 501(a) of the Internal Revenue Code. The schools are not separately incorporated and do not enjoy an independent tax-free nonprofit status. The exemption from taxation only "runs in favor of the Corporation Sole," and not to any of the schools.

The bishop of Springfield appoints a superintendent of schools, who in turn appoints administrators and principals who operate the schools on a day-to-day basis. Of the 725 faculty members in the schools, approximately 400 are lay teachers; the remaining are priests, nuns, or brothers. The schools are funded by tuition fees and revenues collected at Sunday masses, and any operating deficit is paid by the corporation sole. In the first calendar quarter of 1978, each of the thirty-nine schools paid wages in excess of $1,500. G. L. c. 151A, § 8A.

The schools are accredited by the Commonwealth of Massachusetts. Both religious and secular subjects are taught in the schools. However, classes, including courses in the secular subjects, are taught in a manner reflecting the perspectives of the church. Each school has some mandatory religious services, as well as optional religious services.

In 1970, the Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301-3311 (1970), was amended to require the States to extend unemployment insurance coverage to employees of nonprofit corporations, including institutions of higher learning. However, as amended, § 3309(b), permitted the States to exclude from coverage services performed "(1) in the employ of (A) a church or convention or association of churches, or (B) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches; (2) by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order; (3) in the employ of a school which is not an institution of higher education."

In 1976, Congress again amended FUTA and specifically eliminated subsection 3 of § 3309(b), and required the States to conform their employment security statutes to Federal law in order to qualify for Federal certification. 26 U.S.C. § 3304 (1976). In 1977, the Legislature amended the State statutory counterpart to § 3309 so as to conform Massachusetts law to the requirements needed for Federal certification. See St. 1977, c. 720, § 3. See also G. L. c. 151A, § 6 (*r*) and 6 (*s*).

The issue is whether the repeal of the exemption for services performed "in the employ of a school which is not an institution of higher education" means that church-operated elementary and secondary schools are now covered by the State employment security law. The director contends that Congress intended to extend State unemployment benefits to the employees of church-operated elementary and secondary schools, and that the employer is the school. Hence he argues that the exemption for those in the employ of a church, § 3309(b)(1)(A), is inapplicable.

The director suggests that the various amendments[1] expanding unemployment compensation coverage evidence a

---

[1] See employment security amendments of 1970 amending §§ 3304(a)(6), 3306 (c)(8) and 3309 (a)(1)(A), and requiring unemploy-

general congressional intent to afford "universal coverage" for every employee against wage loss resulting from unemployment. He suggests that in light of this congressional intent the 1976 amendments should be interpreted by us as expanding unemployment coverage to employees of church-operated elementary and secondary schools. The director argues that his position is also supported by an opinion issued by the Secretary of the United States Department of Labor (Secretary) in 1978 officially stating that services performed in church-related elementary and secondary schools were covered by FUTA,[2] and that in response to this opinion, all States were required to assess unemployment compensation taxes against church schools. The director urges us to give "great deference" to the Secretary's interpretation of the statute, which supports his reading of the statute. The director concludes that this court should hold that the thirty-nine schools are employing units required to pay unemployment compensation taxes. We do not agree.

Neither G. L. c. 151A, § 6 (*r*), nor 26 U.S.C. § 3309(b) (1970) evidences a clear legislative intent to require States to tax church-operated schools. On the contrary, when Congress deleted subsection (b)(3) of § 3309, specifically pertaining to schools, it retained subsection (b)(1)(A), exempting employees of a church. Since "the two subsections are disjunctive . . . compliance with Subsection 1(A) . . . is sufficient to warrant exemption." *Grace Brethren Church* v. *California*, CV 79-93 MRP, slip op. at 8 (C.D. Cal. Sept. 21, 1979). Since under prior law, employees of church-operated elementary and secondary schools enjoyed dual exemption under § 3309(b)(1)(A) and (b)(3), the elimination of one exemption did not by itself subject these schools to the provisions of the unemployment compensation statute.

---

ment coverage to be extended to individuals employed· by nonprofit organizations and institutions of higher learning.

[2] See *Independent Baptist Church* v. *Tennessee*, 468 F. Supp. 71, 74 (E.D. Tenn. 1978) for the text of the letter. (The letter is not included in the record appendix but is referred to by the director in his brief.)

The record before us indicates that the schools are run for religious purposes, and the employees of the schools are employees of the corporation sole. As we read G. L. c. 151A, § 6 (r), it is dependent on who the employer is, and not on the nature of the services to be rendered. It is abundantly clear on this record that the employer is the Roman Catholic Bishop of Springfield, a corporation sole.

The director's interpretation of the statute would necessitate defining "church" to include only the physical house of worship, and duly ordained ministers. We find no such limitation in § 6 (r). "We are convinced that the plain meaning of 'church' requires a definition as something qualitatively greater than the physical building of worship and, at a minimum, the term encompasses the legal entity commonly referred to as a church." *Alabama* v. *Marshall*, 626 F.2d 366, 369 (5th Cir.), appeal pending, 49 U.S.L.W. 3456 (Dec. 8, 1980). We believe that Congress did not intend the employment security tax to apply to church-operated schools run directly by the church with its own employees.

The argument that we should give great deference to the Secretary's 1978 opinion is inapplicable to the facts of this case. The Secretary's opinion was neither contemporaneous with the congressional amendment nor was it consistent with prior Labor Department constructions of the Federal statute. See Comment, Bringing Christian Schools Within the Scope of the Unemployment Compensation Laws: Statutory and Free Exercise Issues, 25 Vill. L. Rev. 69, 84 n.121 (1979).[3] Hence, there is no reason for us to defer to the Secretary's latest interpretation of the FUTA provisions. See generally *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 139

---

[3] Immediately after the 1976 amendments to FUTA were passed, the United States Labor Department issued two nonpublic memoranda to the States indicating that employees of church-operated schools were still excluded from FUTA under § 3309(b)(1). "[T]he coverage of nonprofit elementary and secondary schools does not affect the optional exclusion in § 3309(b)(1)." Supplement 1 on 1976 Draft Legislation (Dec. 7, 1976). See Comment, Bringing Christian Schools Within the Scope of the Unemployment Compensation Laws: Statutory and Free Exercise Issues, 25 Vill. L. Rev. 69, 84 n.121 (1979).

(1944). Cf. *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 343 (1964).

Our interpretation of § 3309(b)(1)(A), and of its State corollary, G. L. c. 151A, § 6 (*r*), is consistent with the decision of every court that has considered the issue, save one. *In re Northwestern Lutheran Academy*, S.D. (1980) (290 N.W.2d 845 [S.D. 1980]), cert. granted sub nom. *St. Martin Evangelical Lutheran Church* v. *South Dakota*, 449 U.S. 959 (1980). Contra, *Alabama* v. *Marshall*, 626 F.2d 366 (5th Cir. 1980); *Grace Brethren Church* v. *California*, CV 79-93 MRP (C.D. Cal. Sept. 21, 1979); *Roman Catholic Church of the Archdiocese of New Orleans* v. *Louisiana*, 387 So. 2d 1248 (La. App. 1980), appeal pending, 49 U.S.L.W. 3644 (Feb. 6, 1981). *Sant Bani Ashram, Inc.* v. *New Hampshire Dep't of Employment Security*, 121 N.H. 74 (1981); *Grace Lutheran Church* v. *North Dakota Employment Security Bureau*, 294 N.W.2d 767 (N.D. 1980); *Employment Div.* v. *Archdiocese of Portland*, 42 Or. App. 421 (1979); *Christian School Ass'n* v. *Pennsylvania*, 55 Pa. Commw. Ct. 555 (1980).

In light of our holding that the church-operated schools are exempt from the State employment security law by virtue of G. L. c. 151A, § 6 (*r*), we need not consider the bishop's argument that the schools are also exempt by virtue of the prohibitions of the First Amendment to the United States Constitution. The judgment of the District Court is affirmed.

*So ordered.*